MARTIN C. JOHNSON *vs.* NORTHWESTERN MUTUAL LIFE INS. CO.

Argued Jan. 8, 1894.    Affirmed Feb. 1, 1894.

No. 8507.

**This statement of law is overruled on reargument.**

    Where an infant, seventeen years old, obtains a policy of insurance, upon which he pays the premium, and makes several semiannual payments during his minority, but disaffirms the contract immediately upon his becoming of full age, and offers to surrender the policy to the insurance company, and demands the return of the money so paid, he can, in case of refusal, maintain an action for its recovery.

Reargued May 7, 1894.    Affirmed July 10, 1894.

**Contracts of infants.**

    Where the personal contract of an infant is fair and reasonable, and free from any fraud, overreaching, or undue influence by the other party, and has been wholly or partly executed on both sides, so that the infant has enjoyed the benefits of it, but has parted with what he received, or the benefits received are of such a nature that he cannot restore them, he cannot recover what he has paid.

**Burden of proof.**

    But the burden is on the other party to show that the contract was thus fair and reasonable, and free from fraud and overreaching on his part.

**Extent of relief given an infant in case of fraudulent contract.**

    If the contract was fraudulent,—as, for example, where the other party knowingly secured from the infant a contract which was essentially im-

provident, and calculated to squander his estate,—the infant is entitled to recover all that he paid.

### Extent of relief if the contract be fair and reasonable.

But if the contract was free from fraud and bad faith, and was otherwise fair and reasonable, except that what the infant paid was in excess of the value of what he received, he can only recover such excess.

Gilfillan, C. J., dissenting.

Appeal by the defendant, the Northwestern Mutual Life Insurance Company, from an order of the District Court of Hennepin County, Seagrave Smith, J., made August 16, 1893, overruling its demurrer to the complaint.

On October 25, 1888, the defendant insured the life of the plaintiff, Martin C. Johnson, then of Stoughton, Wis., in the sum of $1,000. By its policy it agreed to pay him that sum twenty years thereafter, or in case of his death meantime to pay it to his representatives or assigns sixty days after due proof of his decease. After ten years he was to share in the surplus profits of the company arising from the policy. After three or more annual premiums were paid he was entitled to a paid up non-participating policy for as many twentieth parts of the $1,000 as he had paid annual premiums. He paid $23.29 on that date and agreed to pay a like sum every six months thereafter. He was then but seventeen years of age. He paid seven of these semiannual installments, in all $186.32. On December 19, 1892, immediately after he became of age he served written notice on the Insurance Company that he elected to avoid the policy and offered to return it and demanded a return of the money he had paid. It was not repaid and he soon after brought this action to recover it. His complaint stated these facts and a copy of the policy was attached. Defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled and defendant appeals.

*Lusk, Bunn & Hadley,* for appellant.

The only void contracts of infants are appointments of attorney, their other contracts being only voidable. 1 Am. Lead. Cas. (5th Ed.) *244. Infants' contracts are of three classes: Valid as for necessaries; voidable (or more accurately, rescindable) where there

is a benefit to the infant and no fraud, advantage or unfairness; void where there is fraud or unfairness, or the contract is a power of attorney. This contract is clearly of the second class. A contract not void but rescindable. It was partly executed on both sides by the voluntary payment of money on the infant's part, by carrying the risk of his life four years on the company's part. This was a benefit of value received by the infant and which cannot be restored. He does not offer in his complaint or otherwise, to restore it. Had he died during these four years the company must have paid its policy. He has a right now to receive a paid up policy for four-twentieths of the total insurance the same as an adult. The precise question is this: When the infant has voluntarily paid money and received a consideration under a contract executed on both sides, can he recover the money without returning what he received? Infants buy and pay cash for all imaginable property not necessaries. Is the law such that they can, on reaching majority, recover back all the money they have paid without returning the property? Such a result would shock the moral sense, and would be against the common understanding of the business world. This case is not one where the infant is sued, as where he buys property and gives his note. There he may defend his note. He is only using his privilege as a shield. But here he is in court as plaintiff to recover back, by the aid of a court, what he has paid, without rendering what he has received. He is using his privilege as a sword. The English cases without variation hold that he cannot recover unless he returns what he received. *Holmes* v. *Blogg,* 8 Taunt. 508; *Corpe* v. *Overton,* 10 Bing. 252; *Ex parte Taylor,* 8 DeG., M. & G. 254; *Valentini* v. *Canali,* 24 Q. B. Div. 166.

Mr. Chitty lays down the same rule in 1 Chitty, Cont. 222. Mr. Leake in his work on contracts, page 553, does the same.

In this country Chancellor Kent states the law exactly as it is in England. 2 Kent, Comm. 240. Mr. Parsons undoubtedly states the law too broadly, 1 Parsons, Cont. 322, by omitting the qualification of Kent, "and enjoys the benefit of it."

We think the statement of the law by Chancellor Kent is supported by the large weight of authority in this country. Though some courts seeing the error of Mr. Parson's statement and of some

obiter remarks of Gibbs, C. J., in *Holmes* v. *Blogg*, have carelessly said that case was overruled and have gone as far wrong as Mr. Parsons, but in the opposite direction. *Riley* v. *Mallory*, 33 Conn. 201; *Shurtleff* v. *Millard*, 12 R. I. 272; *Adams* v. *Beall*, 67 Md. 53; *Sparman* v. *Keim*, 83 N. Y. 245.

Suppose an infant works at agreed wages one year for an adult, which wages are paid, can the infant retaining the wages recover the full value of his services again on a *quantum meruit?* That is this case. No court ever has or ever will outrage common sense by pushing the rights of an infant so far. *Breed* v. *Judd*, 1 Gray 455.

Where an infant has deeded real estate for money paid, it seems there may be an exception to this rule. *Chandler* v. *Simmons*, 97 Mass. 508; *Dawson* v. *Helmes*, 30 Minn. 107.

In equity an infant suing to rescind must do equity by returning the consideration. *Hillyer* v. *Bennett*, 3 Edw. Ch. 222; *Kitchen* v. *Lee*, 11 Paige 107; *Ottman* v. *Moak*, 3 Sandf. Ch. 431. It is impossible to give any reason why a different rule should apply at law, when the infant is plaintiff. The old common law rule is that the infant can use his privilege as a shield, not as a sword. *Chicago Mut. Life Ins. Ass'n* v. *Hunt*, 127 Ill. 257.

*Freeman P. Lane* and *William H. Briggs*, for respondent.

Defendant relies on the case of *Holmes* v. *Blogg*, 8 Taunt. 508 and subsequent English authorities, with some cases in our own courts, which, it is claimed, when analyzed and distinguished, support that opinion. *Holmes* v. *Blogg* was virtually overruled in *Cooke* v. *Overton*, 10 Bing. 252, and subsequent English decisions, and has been doubted or denied by the dictum or decisions of their judges repeatedly. In this country the overwhelming weight of authority is in support of the plaintiff's position in the case at bar. Infants are permitted to avoid special contracts for services and recover upon a *quantum meruit;* if personal property has been delivered, to recover it, or its value; when real estate has been conveyed, to recover it; and some of the cases have gone so far as to hold that the infant need not return, nor offer to return, the consideration received. *Price* v. *Furman*, 27 Vt. 268; *Robinson* v. *Weeks*, 56 Me. 102; *Derocher* v. *Continental Mills*, 58 Me. 217;

*Emmons* v. *Murray*, 16 N. H. 385; *Medbury* v. *Watrous*, 7 Hill 110; *Vent* v. *Osgood*, 19 Pick. 572; *Riley* v. *Mallory*, 33 Conn. 201; *Lufkin* v. *Mayall*, 25 N. H. 82; *Briggs* v. *McCabe*, 27 Ind. 327.

The cases in Minnesota are in line with the authorities we have cited and confirm our position. The adoption of any other rule would be in violation of the principle of protection that underlies the whole doctrine of the law pertaining to the dealings and contracts of infants. *Cogley* v. *Cushman*, 16 Minn. 397; *Miller* v. *Smith*, 26 Minn. 248.

BUCK, J. On the 25th day of October, 1888, the plaintiff, Johnson, who was then a minor, seventeen years old, obtained a policy of insurance on his own life in the Northwestern Mutual Life Insurance Company, this defendant, for the sum of $1,000, in consideration of the payment by him of the premium of $23.29, and the semiannual payment of a like sum to defendant on or before noon of the 25th days of October and April thereafter in each and every year during the continuance of the policy, viz. for 20 years. He made eight semiannual payments amounting to the total sum of $186.32, and immediately thereafter plaintiff attained his majority, or full age of twenty one years; and thereupon, on December 21, 1892, he duly served upon said defendant his notice in writing that he had arrived at his majority, and that he elected to avoid the contract of insurance between the defendant and himself, and offered to return said policy to the defendant, and demanded of the defendant that it return to him the moneys which he had paid to said company, amounting to the sum above named, which the defendant refused to do, whereupon he brought this action to recover of the defendant the amount so paid, upon the ground that he was an infant at the time of the execution of the said contract and during the times when he made the semiannual payments as herein stated.

The defendant interposed a demurrer to the plaintiff's complaint upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The court below overruled the demurrer, and the defendant appealed to this court.

In its memorandum the court below gave as its reason for overruling the demurrer that "this contract of insurance was not bene-

ficial to the insured; it was for the benefit of third persons." We do not see how the court fell into such an error, for the plain provisions of the policy show clearly that it was for the benefit of the plaintiff, for it expressly provides that at the end of twenty years the policy is payable to himself if living, and after ten years he could share in the company's surplus, according to usage, at each distribution, until all contributions to the surplus funds, found in the course of making such contributions to have arisen from the policy, should have been returned. After three or more annual premiums were paid in cash, if he made default in the payment of any premium on the day it became due, he was entitled to a paid-up nonparticipating policy for as many twentieth parts of the original sum insured as there were complete annual premiums so paid. There were also other benefits which he would receive, which we need not further specify particularly. But, notwithstanding the wrong reason given by the trial court for its decision, if the decision was correct, it must stand.

The question of the proper construction of contracts between an infant and an adult is frequently one of great difficulty. The power which exists upon the part of an infant to insist upon the performance of a contract which is for his benefit and to repudiate one which is against his interest necessarily results in this condition of affairs, and the only method for courts to deal with such questions is to apply so far as possible the legal or equitable rules to each case as it may present itself for judicial determination. The infirmities which are always attendant upon infancy are so many, and present themselves in so many different phases, that the law must necessarily throw its protection around them, and allow them to avoid acts which are obviously injurious, and which are brought about by their own imprudent conduct, or by the evil designs of others. But there are contracts made by infants which are valid and binding upon them, such as contracts for necessaries. It is conceded, however, that this contract is not one coming within the term "necessaries," and it must also be conceded that there was no fraud on the part of the defendant whereby the plaintiff was induced to enter into this contract of insurance. Nor does the question of delay on the part of plaintiff in disaffirming this contract enter into the case for discussion or for determination. If he had

a right to disaffirm the contract at all, it was done promptly, and without delay, after he attained his majority. Was this contract void or voidable? We are of the opinion that it was not void. It was for the benefit of the infant. That is to say, construing it in accordance with the well-understood business principles and practical experience of the age, it should be deemed one beneficial to him. Like all business ventures, even among adults, it might prove disastrous or it might be of benefit to the plaintiff. It was the ordinary policy of insurance upon the usual terms, and in a solvent company. At least no suggestion is made to the contrary.

Was the policy voidable, and, if so, was it of that character which would not only permit the plaintiff to defend against the collection of anything further on the policy, but, by reason of his infancy, entitle him, when arriving at his majority, to collect back whatever he had paid while an infant? We are of the opinion that the contract was voidable. Even if the contract was beneficial to him while he was an infant, in the sense that if he retained it there might be certain contingencies which would arise whereby he would be entitled to receive the actual benefits mentioned in the policy, yet he does not seek to retain the policy, or claim any actual benefits under its terms, either at present or in the future. All that he could return or surrender up he offered to do at the very earliest opportunity after arriving at full age. He has secured no money or property under it or by virtue of its terms, and no consideration other than the contingent one which we have mentioned. He has not squandered anything which he has received from defendant. He retains nothing either of actual value or any right. In no way has he appropriated any of the fruits of the contract to his own advantage, nor does he seek to do so. The defendant has had the use of the money paid it for several years. As between the two parties, the defendant so far has profited by the contract. If the plaintiff succeeds in this action, the defendant suffers no loss or damage except to return to plaintiff just what it got of him while an infant.

It did not obtain the money of the plaintiff, it is true, through deceit, fraud, or concealment of any fact, nor in any way impose upon the infant, but it did obtain and receive a fund belonging to him which it was not necessary for him to part with. This was

done at a time when the law adjudges him incapable of determining whether it was for his benefit or not. To leave this question of making contracts to the immature judgment of infants who are easily influenced or misled, and frequently to their great injury, and then have the courts continually called upon to decide whether the contract was of such a beneficial nature to the infant that it might be enforced against him, would lead to an endless variety of decisions. The interest of the infant will be best subserved by holding such contracts voidable. It is a rule which can be appropriately applied in this case, for the plaintiff has performed all that can be reasonably asked of him to do. We have examined many of the authorities cited by the counsel for the appellant in their brief, but we are of the opinion that the rule heretofore laid down in this court is the correct one to follow, and is applicable to this case. *Miller* v. *Smith*, 26 Minn. 248, (2 N. W. 942;) *Conrad* v. *Lane*, 26 Minn. 389, (4 N. W. 696.)

The order appealed from is affirmed.

(Opinion published 57 N. W. Rep. 934.)

---

### ON REARGUMENT.

MITCHELL, J. This case was argued and decided at the last term of this court. A reargument was granted for the reasons that although the amount was small the legal principles involved were important; the time permitted for argument under our rules was brief; the case was decided near the end of the term, without, perhaps, the degree of consideration that its importance demanded; and, on further reflection, we are not satisfied that our decision was correct.

The former opinion laid down the following propositions, to which we still adhere: (1) That the contract of insurance was of benefit to the infant himself, and was not a contract for the benefit of third parties. (2) The contract, so far as appears on its face, was the usual and ordinary one for life insurance, on the customary terms, and was a fair and reasonable one, and free from any fraud, unfairness, or undue influence on part of the defendant, unless the contrary is to be presumed from the fact that it was made with the infant.

It is not correct, however, to say that the plaintiff has received no benefit from the contract, or that the defendant has parted with nothing of value under it.   True, the plaintiff has received no money, and the defendant has paid none to the plaintiff; but the life of the former was insured for four years, and if he had died during that time the defendant would have had to pay the amount of the policy to his estate.   The defendant carried the risk all that time, and this is the essence of the contract of insurance.   Neither does it follow that the risk has cost the defendant nothing in money because plaintiff himself was not one of those insured who died.   The case is therefore one of a voidable or rescindable contract of an infant, partly performed on both sides, the benefits of which the infant has enjoyed, but which he cannot return, and where there is no charge of fraud, unfairness, or undue influence on the part of the other party, unless, as already suggested, it is to be presumed from the fact that the contract was made with an infant.

The question is, can the plaintiff recover back what he has paid, assuming that the contract was in all respects fair and reasonable? The opinion heretofore filed held that he can.   Without taking time to cite or discuss any of our former decisions, it is sufficient to say that none of them commit this court to such a doctrine. That such a rule goes further than is necessary for the protection of the infant, and would often work gross injustice to those dealing with him, is, to our minds, clear.   Suppose a minor engaged in agriculture should hire a man to work on his farm, and pay him reasonable wages for his services.   According to this rule the minor might recover back what he paid, although retaining and enjoying the fruits of the other man's labor.   Or, again, suppose a man engaged in mercantile business, with a capital of $5,000, should, from time to time, buy and pay for $100,000 worth of goods, in the aggregate, which he had sold, and had got his pay.   According to this doctrine, he could recover back the $100,000 which he had paid to the various parties from whom he had bought the goods.   Not only would such a rule work great injustice to others, but it would be positively injurious to the infant himself.   The policy of the law is to shield or protect the infant, and not to debar him from the privilege of contracting.

But, if the rule suggested is to obtain, there is no footing on

which an adult can deal with him, except for necessaries. Nobody could or would do any business with him. He could not get his life insured. He could not insure his property against fire. He could not hire servants to till his farm. He could not improve or keep up his land or buildings. In short, however advantageous other contracts might be to him, or however much capital he might have, he could do absolutely nothing, except to buy necessaries, because nobody would dare to contract with him for anything else. It cannot be that this is the law. Certainly, it ought not to be.

The following propositions are well settled, everywhere, as to the rescindable contracts of an infant, and in that category we include all contracts except for necessaries:

*First.* That, in so far as the contract is executory on part of an infant, he may always interpose his infancy as a defense to an action for its enforcement. He can always use his infancy as a shield.

*Second.* If the contract has been wholly or partly performed on his part, but is wholly executory on part of the other party, the minor ·having received no benefits from it, he may recover back what he has paid or parted with.

*Third.* Where the contract has been wholly or partly performed on both sides, the infant may always rescind, and recover back what he has paid, upon restoring what he has received.

*Fourth.* A minor, on arriving at full age, may avoid a conveyance of his real estate without being required to place the grantee in *statu quo,* although a different rule has sometimes been adopted by courts of equity when the former infant has applied to them for aid in avoiding his deeds. Whether this distinction between conveyances of real property and personal contracts is founded on a technical rule, or upon considerations of policy growing out of the difference between real and personal ·property, it is not necessary here to consider.

*Fifth.* Where the contract has been wholly or partly performed on both sides, the infant, if he sues to recover back what he has paid, must always restore what he has received, in so far as he still retains it in specie.

*Sixth.* The courts will always grant an infant relief where the other party has been guilty of fraud or undue influence. As to what would constitute a sufficient ground for relief under this head,

and what relief the courts would grant in such cases, we will refer to hereafter.

But suppose that the contract is free from all elements of fraud, unfairness, or overreaching, and the infant has enjoyed the benefits of it, but has spent or disposed of what he has received, or the benefits received are, as in this case, of such a nature that they cannot be restored. Can he recover back what he has paid? It is well settled in England that he cannot. This was held in the leading case of *Holmes* v. *Blogg*, 8 Taunt. 508, approved as late as 1890 in *Valentini* v. *Canali*, 24 Q. B. Div. 166. Some obiter remarks of the chief justice in *Holmes* v. *Blogg*, to the effect that an infant could never recover back money voluntarily paid, were too broad, and have often been disapproved,—a fact which has sometimes led to the erroneous impression that the case itself has been overruled. *Corpe* v. *Overton*, 10 Bing. 252 (decided by the same court), held that the infant might recover back what he had voluntarily paid, but on the ground that the contract in that case remained wholly executory on part of the other party, and hence the infant had never enjoyed its benefits.

In Chitty on Contracts (volume 1, p. 222), the law is stated in accordance with the decision in *Holmes* v. *Blogg*. Leake,—a most accurate writer,—in his work on Contracts (page 553), sums up the law to the same effect. In this country, Chancellor Kent (2 Kent, Comm. 240), and Reeves in his work on Domestic Relations (chapters 2 and 3, tit. "Parent and Child") state the law in exact accordance with what we may term the "English rule." Parsons, in his work on Contracts (volume 1, p. 322), undoubtedly states the law too broadly, in omitting the qualification, "and enjoys the benefit of it."

At least a respectable minority of the American decisions are in full accord with what we have termed the "English rule." See, among others, *Riley* v. *Mallory*, 33 Conn. 206; *Adams* v. *Beall*, 67 Md. 53, (8 Atl. 664;) *Breed* v. *Judd*, 1 Gray, 455. But many—perhaps a majority—of the American decisions, apparently thinking that the English rule does not sufficiently protect the infant, have modified it; and some of them seem to have wholly repudiated it, and to hold that although the contract was in all respects fair and reasonable, and the infant had enjoyed the benefits of it, yet if the

infant had spent or parted with what he had received, or if the benefits of it were of such a nature that they could not be restored, still he might recover back what he had paid. The problem with the courts seems to have been, on the one hand, to protect the infant from the improvidence incident to his youth and inexperience, and how, on the other hand, to compel him to conform to the principles of common honesty. The result is that the American authorities—at least the later ones—have fallen into such a condition of conflict and confusion that it is difficult to draw from them any definite or uniform rule.

The dissatisfaction with what we have termed the "English rule" seems to be generally based upon the idea that the courts would not grant an infant relief, on the ground of fraud or undue influence, except where they would grant it to an adult on the same grounds, and then only on the same conditions. Many of the cases, we admit, would seem to support this idea. If such were the law, it is obvious that there would be many cases where it would furnish no adequate protection to the infant. Cases may be readily imagined where an infant may have paid for an article several times more than it was worth, or where the contract was of an improvident character, calculated to result in the squandering of his estate, and that fact was known to the other party; and yet if he was an adult the court would grant him no relief, but leave him to stand the consequences of his own foolish bargain. But to measure the right of an infant in such cases by the same rule that would be applied in the case of an adult would be to fail to give due weight to the disparity between the adult and the infant, or to apply the proper standard of fair dealing due from the former to the latter. Even as between adults, when a transaction is assailed on the ground of fraud, undue influence, etc., their disparity in intelligence and experience, or in any other respect which gives one an ascendency over the other, or tends to prevent the latter from exercising an intelligent and unbiased judgment, is always a most vital consideration with the courts. Where a contract is improvident and unfair, courts of equity have frequently inferred fraud from the mere disparity of the parties.

If this is true as to adults, the rule ought certainly to be applied with still greater liberality in favor of infants, whom the law deems

so incompetent to care for themselves that it holds them incapable of binding themselves by contract, except for necessaries. In view of this disparity of the parties, thus recognized by law, every one who assumes to contract with an infant should be held to the utmost good faith and fair dealing. We further think that this disparity is such as to raise a presumption against the fairness of the contract, and to cast upon the other party the burden of proving that it was a fair and reasonable one, and free from any fraud, undue influence, or overreaching.

A similar principle applies to all the relations, where, from disparity of years, intellect, or knowledge, one of the parties to the contract has an ascendency which prevents the other from exercising an unbiased judgment,—as, for example, parent and child, husband and wife, guardian and ward. It is true that the mere fact that a person is dealing with an infant creates no "fiduciary relation" between them, in the proper sense of the term, such as exists between guardian and ward; but we think that he who deals with an infant should be held to substantially the same standard of fair dealing, and be charged with the burden of proving that the contract was in all respects fair and reasonable, and not tainted with any fraud, undue influence, or overreaching on his part. Of course, in this as in all other cases, the degree of disparity between the parties, in age and mental capacity, would be an important consideration. Moreover, if the contract was not in all respects fair and reasonable, the extent to which the infant should recover would depend on the nature and extent of the element of unfairness which characterized the transaction.

If the party dealing with the infant was guilty of actual fraud or bad faith, we think the infant should be allowed to recover back all he had paid, without making restitution, except, of course, to the extent to which he still retained in specie what he had received. Such a case would be a contract essentially improvident, calculated to facilitate the squandering the infant's estate, and which the other party knew or ought to have known to be such, for to make such a contract at all with an infant would be fraud. But if the contract was free from any fraud or bad faith, and otherwise reasonable, except that the price paid by the infant was in excess of the value of what he received, his recovery should be limited to the

difference between what he paid and what he received. Such cases as *Medbury* v. *Watrous*, 7 Hill, 110; *Sparman* v. *Keim*, 83 N. Y. 245; and *Heath* v. *Stevens*, 48 N. H. 251,—really proceed upon this principle, although they may not distinctly announce it. The objections to this rule are, in our opinion, largely imaginary, for we are confident that in practice it can and will be applied by courts and juries so as to work out substantial justice.

Our conclusion is that where the personal contract of an infant, beneficial to himself, has been wholly or partly executed on both sides, but the infant has disposed of what he has received, or the benefits recovered by him are such that they cannot be restored, he cannot recover back what he has paid, if the contract was a fair and reasonable one, and free from any fraud or bad faith on part of the other party, but that the burden is on the other party to prove that such was the character of the contract; that, if the contract involved the element of actual fraud or bad faith, the infant may recover all he paid or parted with, but if the contract involved no such elements, and was otherwise reasonable and fair, except that what the infant paid was in excess of the value of what he received, his recovery should be limited to such excess. It seems to us that this will sufficiently protect the infant, and at the same time do justice to the other party. Of course, in speaking of contracts beneficial to the infant, we refer to those that are deemed such in contemplation of law.

Applying these rules to the case in hand, we add that life insurance in a solvent company, at the ordinary and usual rates, for an amount reasonably commensurate with the infant's estate, or his financial ability to carry it, is a provident, fair, and reasonable contract, and one which it is entirely proper for an insurance company to make with him, assuming that it practices no fraud or other unlawful means to secure it; and if such should appear to be the character of this contract the plaintiff could not recover the premiums which he has paid in, so far as they were intended to cover the current annual risk assumed by the company under its policy.

But it appears from the face of the policy that these premiums covered something more than this. The policy provides that after payment of three or more annual premiums the insured will be entitled to a paid-up, nonparticipating policy for as many twentieths

of the original sum insured ($1,000) as there have been annual premiums so paid.    The complaint alleges the payment of four annual premiums.    Hence, the plaintiff was entitled, upon surrender of the original policy, to a paid-up, nonparticipating policy for $200; and it therefore seems to us that, having elected to rescind, he was entitled to recover back, in any event, the present cash "surrender" value of such a policy.    For this reason, as well as that the burden was on the defendant to prove the fair and honest character of the contract, the demurrer to the complaint was properly overruled. The result arrived at in the former opinion was therefore correct, and is adhered to, although on somewhat different grounds.

Order affirmed.

Buck, J., absent, sick, took no part.

Gilfillan, C. J.    I dissent, and especially from the proposition that in any case the contract of a minor is presumed to be fraudulent on the part of the other party to it.    If two minors contract together, each may avoid the contract.    Is that because each is presumed to have fraudulently drawn the other into making it?    If a contract be wholly executory when the minor seeks to avoid it, will any amount of proof that it is advantageous to him, and made in good faith and honesty on the part of the adult, prevent the minor avoiding it?    If wholly executory when made, will the subsequent performance raise a presumption that it was fraudulent when made?

A minor's contract, except for necessaries, is voidable by him only because he is, in law, incapable to bind himself.    When he seeks to avoid a contract the question arises, on what conditions shall he do so?    In such cases there are two considerations— *First*, to afford him full protection from the consequences of his own incapacity; *Second*, that being done, to prevent him making his legal incapacity a means to defraud others.

If the contract be wholly executory, both ends will be attained by allowing him to repudiate it, which will leave both parties as they were before it was made.    But suppose it partly performed on both sides?    He may undoubtedly avoid further performance. But if he takes the aggressive, and seeks to recover what he has parted with in performance, what then?    The authorities are

agreed that, if he have in specie what he received under it, he must restore it, as a condition of recovering what he parted with. The disagreement in the authorities is in cases where he cannot restore the benefits he has received; where he has expended them, or they are of such a character that they cannot be restored. I am speaking only of contracts relating to the personalty.

Since the first argument of this cause, I have come to the conclusion that whether, when he cannot restore what he has received, he may recover what he has parted with, will depend on the character of the contract. If, from the subject-matter or terms of the contract, it is a wasting of his estate, so that to require him to restore what he has received will likewise waste his estate, it will not be required of him. But if the contract be, both in subject-matter and terms, a provident one,—advantageous to the minor, —the court, to prevent a fraud on the other party, unnecessary to his protection, will not permit him to recover what he has parted with without setting off against it what he has received.

Such is this case.

(Opinion published 59 N. W. Rep. 992.)