ALFRED G. COREY, APPELLEE, ET AL. V. SCHUSTER, HINGSTON & COMPANY ET AL., APPELLANTS.

FILED MARCH 5, 1895.   No. 6203.

1. **Homestead**: ACTION TO REMOVE CLOUD FROM TITLE: APPARENT LIEN OF JUDGMENTS: INJUNCTION. The appellee owned a lot and building situate thereon in McCool Junction, York county. The total value of the premises was less than $2,000. Appellee with his family occupied these premises as a homestead. Appellants recovered judgments against appellee, which were of record in the office of the clerk of the district court of said county. The judgments were not based on debts secured by a mortgage, mechanics' or vendors' liens, nor for laborers', clerks', or servants' wages. *Held*, (1) That such judgments were apparent liens upon appellee's homestead and constituted a cloud upon his title thereto, which a court of equity had jurisdiction to remove at the suit of the appellee; (2) that it was not an essential prerequisite to the maintenance of the action that the judgment creditors were threatening to cause executions to be issued and levied upon the homestead; (3) that the judgments might be used injuriously and vexatiously to harass the homestead owner and injure and depreciate his title to the property were sufficient to authorize the interposition of a court of equity.

2. ———: DWELLING HOUSE. Appellee's building on said premises was a two-story frame building. He used the first floor for mercantile purposes and resided with his family on the second floor. *Held*, (1) Such building was a "dwelling house" within the meaning of section 1, chapter 36, Compiled Statutes, 1893, entitled "Homesteads;" (2) this statute by the word "dwelling house" does not contemplate any particular kind of house. This requirement of the law is satisfied if the homestead claimant and his family reside in the habitation, whatever be its character, on the premises claimed as a homestead.

3. ———: ABANDONMENT: EVIDENCE. The rule is that to establish abandonment of a homestead the evidence must show not only that the party removed from the homestead, but that he did so with the intention of not returning, or, after such removal, he formed the intention of remaining away. *Mallard v. First Nat. Bank of North Platte*, 40 Neb., 784, and cases there cited, followed.

4. ———: ———: ———.   One of the issues tried in this case was whether appellee had abandoned his homestead.   The evidence was that appellee, prior to the bringing of this action, leased the premises at McCool Junction for a year, the rent, by the terms of the lease, being applied to discharge a mortgage on the premises; removed with his family to a town in an adjoining county for the purpose of sending his older children to a college located there; left a part of his household goods in the building on the lot at McCool Junction; rented a house in the town removed to in which he and his family resided; that when he removed from his homestead he intended returning there; that he had not since changed that intention; that while he resided in the adjoining county he voted once therein at a general election.   The district court found that appellee had not abandoned his homestead. *Held*, (1) That whether appellee at the time he removed from McCool Junction did so with the intention of returning, and whether appellee after settling in the adjoining county formed the intention of remaining away from his former homestead, were questions of fact for the trial court; (2) that by voting in the adjoining county appellee may have violated the law,—may have committed a crime,—but whether he did so was not the issue tried in this case; (3) appellee's voting in the adjoining county was evidence tending to show that when he removed from Mc-Cool Junction he did so with the intention of not returning, or that, after settling in the adjoining county, he had formed the intention of remaining away from his former homestead, but such act of appellee was not conclusive evidence of such intention; (4) that the district court was not bound to disregard all the other facts and circumstances in the case in favor of the contention of appellee and find that because he had exercised the right of suffrage in the adjoining county that such fact was conclusive evidence that he had abandoned his former homestead; (5) that the evidence supported the finding of the district court. (*Dennis v Omaha Nat. Bank*, 19 Neb., 675.)

5. ———: Injunction Against Judgments: Decree.   That the decree of the district court perpetually enjoining the appellants from attempting to satisfy their judgments by judicial sale of said homestead premises should be so modified as to permit appellants, at any time, to move the court for a vacation of such injunction on showing that the appellee, still owning the legal title to said premises, had permanently abandoned the premises as a homestead, or that said premises had appreciated in value so that the interest of the appellee therein had become of a greater value than $2,000.

APPEAL from the district court of York county. Heard below before BATES, J.

The facts are stated in the opinion by Commissioner RAGAN.

*A. G. Greenlee* and *George B. France,* for appellants:

An action *quia timet* to declare a judgment not to be a lien on property claimed as a homestead and to debar the creditor from claiming such lien cannot be maintained by a judgment debtor, nor by any one, while the judgment debtor remains the owner of the property.

The property in controversy does not possess the essential characteristics of a homestead. (*Garrett v. Jones,* 10 So. Rep. [Ala.], 702; *Rhodes v. McCormick,* 4 Ia., 368.)

If the property ever was a homestead it was abandoned as such long prior to the commencement of this action. (*Bowker v. Collins,* 4 Neb., 494; *Jarvais v. Moe,* 38 Wis., 440; *Garibaldi v. Jones,* 48 Ark., 230; *In re Estate of Phelan,* 16 Wis., 79; *Warren v. Peterson,* 32 Neb., 728; *Holmes v. Greene,* 7 Gray [Mass.], 299; *Herrick v. Graves,* 16 Wis., 157; *Atchison Savings Bank v. Wheeler,* 20 Kan., 625; *Kimball v. Wilson,* 59 Ia., 638; *Cabeen v. Mulligan,* 37 Ill., 230.)

*Sedgwick & Power, contra,* contending that the homestead was not abandoned, cited: *Kenley v. Hudleson,* 99 Ill., 493; *Holden v. Pinney,* 6 Cal., 234; *Dunn v. Tozer,* 10 Cal., 171; *Bunker v. Paquette,* 37 Mich., 79; *Euper v. Alkire,* 37 Ark., 283; *Brown v. Watson,* 41 Ark., 309; *Wetz v. Beard,* 12 O. St., 431; *Lamb v. Wogan,* 27 Neb., 238; *Giles v. Miller,* 36 Neb., 346; *Dennis v. Omaha Nat. Bank,* 19 Neb., 675.

RAGAN, C.

On the 25th day of November, 1892, Alfred G. Corey and Mary C. Corey brought this action in the district court

of York county, making Schuster, Hingston & Co. and Plummer, Perry & Co. defendants thereto. The Coreys in their petition alleged that they were husband and wife, residents and citizens of the state of Nebraska, had a family of five children; that they were the owners in fee-simple of lot 23, in block 48, in the town of McCool Junction, in said York county; that said real estate consisted of one lot and a dwelling house and out-buildings thereon, all of the value of not to exceed $800; that they had occupied said premises as their homestead since June, 1885, until within about four months of the time of filing the petition, during which four months they had been living temporarily in Clay county, Nebraska, where they were educating their children, the older children being in attendance upon a college in said Clay county; that neither of them had any other homestead than the above described real estate, and that neither of them had any other real estate whatever; that the parties made defendants to the action, in the year 1891, recovered certain judgments against the said Alfred G. Corey, which judgments are of record in the office of the clerk of the district court of said York county and are wholly unpaid; that said judgments were not based on debts secured by mechanics', laborers', or vendors' liens, nor on debts secured by mortgage on said premises, but that they cast a cloud upon the title of plaintiffs to said premises and caused persons not learned in the law and not fully informed of the facts to question the title of said premises as against said judgments, to the annoyance, injury, and damage of the plaintiffs; that said premises were incumbered by a mortgage of $300; that plaintiffs had but little means and were desirous of selling said premises for the purpose of investing the proceeds in a cheaper homestead and one not incumbered. The prayer was that said judgments and each of them might be decreed to be not liens upon the premises; that the cloud cast thereby upon the title to said premises might be removed, and the parties

made defendants perpetually enjoined from asserting or. claiming a lien on said premises by virtue of said judgments.: The parties made defendants to the action appeared and an-swered the petition.   The district court found all the issues in favor of Corey and wife and entered a decree as follows.: "It is hereby ordered and adjudged by the court that such judgments be, and they hereby are, declared no liens on said real estate, and said defendants are hereby enjoined from setting up any claim to or claiming any lien on said premises by reason of their said judgments."   From this decree Schuster, Hingston & Co. and Plummer, Perry & Co. have appealed.

1.  The first contention is that the petition does not state facts sufficient to constitute a cause of action.   The argu-ment is that these judgments do not constitute clouds upon the title to the homestead.   By the provisions of our statute a homestead not exceeding in value $2,000, consisting of a dwelling house in which the claimant resides and the land on which the same is situate, not exceeding two contiguous lots within any incorporated city or village, is exempt from judgment liens and from execution or forced sale, unless the judgment against the owner of the homestead shall be based on certain debts not material here. (Ch. 36, Comp. Stats., 1893, entitled "Homesteads.")   By section 477 of the Code of Civil Procedure it is provided: "The lands and tenements of the debtor within the county where the judgment is entered shall be bound for the satisfaction thereof, from the first day of the term at which judgment is rendered," etc.   It is clear then that the judgments of the appellants are apparent liens upon the homestead of the Coreys.   Do these apparent liens constitute a cloud upon their title to said premises?

In *Lick v. Ray*, 43 Cal., 83, it is said: "If a title against which relief is prayed as a cloud be of such a character that, if asserted by action and put in evidence, it would drive the other party to the production of his own title in order

to establish a defense, it constitutes a cloud which the latter has a right to call upon equity to remove."

In *Sanxay v. Hunger*, 42 Ind., 44, it is said: "When the claim set up by one to an interest in land appears to be valid on the face of the record, and the defect can only be made to appear by extrinsic evidence, particularly if that evidence depends upon oral testimony, it presents a case invoking the aid of a court of equity to remove it as a cloud upon the title." The court cites 1 Story, Equity, sec. 711, and *Crooke v. Andrews*, 40 N. Y., 547.

Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title, and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession, or harassed by suits in regard to that title. (Mr. Justice Gray, in *Frost v. Spitley*, 121 U. S., 552; *Phelps v. Harris*, 101 U. S., 370; *City of Hartford v. Chipman*, 21 Conn., 488.)

In 3 Pomeroy, Equity Jurisprudence, it is said:

"Sec. 1398. The jurisdiction of courts of equity to remove clouds from title is well settled, the relief being granted on the principle *quia timet*; that is, that the deed or other instrument or proceeding constituting the cloud may be used to injuriously or vexatiously embarrass or affect a plaintiff's title.

"Sec. 1399. Whether or not the jurisdiction will be exercised depends upon the fact that the estate or interest to be protected is equitable in its nature, or that the remedies at law are inadequate where the estate or interest is legal. * * * While a court of equity will set aside a deed, agreement or proceeding affecting real estate, where extrinsic evidence is necessary to show its invalidity, because such instrument or proceeding may be used for annoying and injurious purposes at a time when the evidence to contest or resist it may not be as effectual as if used at once, still, if the defect appears upon its face and a resort

to extrinsic evidence is unnecessary, the reason for equitable interference does not exist for it cannot be said that any cloud whatever is cast upon the title."

Applying the doctrine of these authorities to the facts of the case at bar we reach the conclusion that the judgments of the appellants are apparent liens upon the homestead of the Coreys, and as such constitute a cloud upon the title to the homestead, which a court of equity has jurisdiction to remove at the suit of the homestead owner. If the appellants should cause executions to be issued and levied upon this real estate it would require the production of extrinsic evidence on the part of the Coreys to show that such real estate was not in fact subject to the liens of such judgments. It is not an essential prerequisite to the maintenance of such an action as this that the judgment creditors should be threatening or about to cause executions to be issued and levied upon the exempt homestead. It is sufficient, to authorize the interposition of a court of equity, that the existence of the apparent liens of the judgments upon the premises may be used injuriously or vexatiously to harass the owner of the homestead and injure and depreciate his title to the property.

2. The evidence in the record shows that the building on the homestead premises of Corey was a one and one-half story frame building. The first floor of this building was used by Corey for the purpose of conducting therein a mercantile business, while he and his family resided on the second floor, which was divided into several rooms or apartments suitable for dwelling purposes. The second argument is that the building on the homestead premises was and is not a "dwelling house" within the meaning of the statute. We think this argument wholly without merit. The law does not contemplate by the word "dwelling house" any particular kind of house. It may be a "brownstone front," all of which is occupied for residence purposes, or it may be a building part of which is used for

banking or business purposes, or it may be a tent of cloth. All that the law requires on the subject is that the homestead claimant and his family should reside in this habitation or dwelling house, whatever be its character, on the premises claimed as a homestead.

3. The third argument is that the evidence shows that Corey and his wife abandoned the premises claimed as a homestead prior to the bringing of this suit. The evidence is that Corey and his wife resided in the upper story of the building on this lot from 1885 until within a few months before the bringing of this suit; that while they were so residing on the premises Corey conducted a mercantile business on the first floor of the building; that he failed in business and made an assignment for the benefit of his creditors; that for some time after that event he sold machinery on commission, using the building formerly used by him as a store-room for that purpose, himself and family continuing to reside in the upper story of the building; that about four months before this action was brought he leased the homestead premises for a year or a year and one-half, the provisions of the lease being such that the rents were applied to the discharge of the mortgage incumbrance upon the homestead premises; that he then removed with his family to Fairfield, in Clay county, in this state; that he went there intending to return to McCool Junction; that at the time of the removal of himself and family to Fairfield he left part of his household goods in the building on the premises claimed as a homestead in McCool Junction; that he bought no property in Fairfield; that he moved his family to that place for the purpose of sending his oldest children to a college situate there. All this evidence is practically undisputed. "The rule is, that to establish abandonment of a homestead the evidence must show, not only that the party removed from the homestead, but that he did so with the intention of not returning, or, after such removal, he formed the intention of remaining

away." (*Edwards v. Reid*, 39 Neb., 645; *Mallard v. First Nat. Bank of North Platte*, 40 Neb., 784, and cases there cited.) But Corey while living in Fairfield voted at the general election held preceding the bringing of this action; and this act of Corey in voting, it is argued by counsel for appellants, conclusively establishes either that Corey at the time he left McCool Junction left without the intention of ever returning to his homestead, or that after he settled in Fairfield he formed the intention of remaining away from his former homestead. Whether the Coreys at the time they removed from McCool Junction to Fairfield did so with the intention of returning to McCool Junction, and whether after they settled in Fairfield formed the intention of remaining there or at least of not returning to their former homestead, were questions of fact for the trial court, which it found in their favor. The fact that Corey voted while residing in Fairfield was and is a strong circumstance tending to show that he either left McCool Junction with the intention of not returning there to live, or that after he settled in Fairfield he formed the intention of remaining away from or not returning to his former homestead. But this act of Corey, though evidence of abandonment of his homestead, was not conclusive evidence of such abandonment. Corey in voting in Fairfield may have violated the law, may have committed a crime, but that was not the issue tried in this case. If Corey removed with his family from McCool Junction to Fairfield temporarily and with the intention of returning to his homestead at McCool Junction, and if after settling in Fairfield he did not abandon the intention of returning, then the mere fact that he unlawfully, illegally, or criminally exercised the right of suffrage while in Fairfield is not conclusive evidence that he had abandoned his homestead. What Corey and his wife, or either of them, said, if anything, at the time they removed from McCool Junction as to whether they were

going away permanently or with the intention of returning
the fact that they left part of their household goods at Mc-
Cool Junction, the fact that they applied the rents from the
McCool Junction homestead to the discharge of the mort-
gage upon the premises, were all facts and circumstances in
evidence which tended to support the contention of the
Coreys that they had not abandoned their homestead; and
the fact that Corey exercised the right of suffrage while re-
siding in Fairfield was evidence, and, as already said, very
strong evidence, which tended to support the contention of
the appellants that Corey had abandoned his homestead at
McCool Junction when he removed therefrom; but what
Corey and his wife said as to their intentions, their leaving
part of their household goods at McCool Junction, and the
application they made of the rent derived from the home-
stead, nor either of these facts, were conclusive evidence in
favor of their theory, nor was the district court bound to dis-
regard all the facts and circumstances in evidence in the case
in favor of the contention of Corey and wife and say that be-
cause Corey exercised the right of suffrage while in Fairfield
that all his other conduct and all the other circumstances in
evidence in the case should count for nothing. Corey's vot-
ing in Fairfield should have been and was by the district court
weighed and considered in connection with all the other con-
duct of Corey and his wife in the premises and the other facts
and circumstances in evidence. (*Dennis v. Omaha Nat. Bank*,
19 Neb., 675.) The evidence sustains the finding of the dis-
trict court that the Coreys did not remove from McCool
Junction with the intention of not returning. The decree
of the district court, however, is too broad. It perpetually
enjoins the appellants from attempting to satisfy their
judgments by a judicial sale of the real estate in contro-
versy in this action. If this real estate by reason of the
growth and development of the town of McCool Junction
or the surrounding country, or other cause should appre-
ciate in value until it was worth more than $2,000, then

the appellants would be entitled to have applied towards the satisfaction of their judgments whatever interests the Coreys had in said real estate in excess of $2,000; and if they in the future—still owning the title to these premises —should permanently abandon such premises as a home-stead, then it is clear that the appellants would be entitled to have their judgments satisfied by a judicial sale of said real estate. (*Hoy v. Anderson,* 39 Neb., 390.) The decree of the district court will therefore be so modified as to per-mit the appellants to at any time move the court for a va-cation of the injunction granted in this case on showing that the Coreys, still owning the legal title to said prem-ises, have permanently abandoned the premises as a home-stead, or that said premises have appreciated in value so that the interest of the Coreys therein is of a greater value than $2,000; and as thus modified the decree of the dis-trict court is affirmed.

JUDGMENT ACCORDINGLY.