JOSEPH ALT v. JOHN GRAFF and Another.[1]

June 19, 1896.

Nos. 9963—(137).

**Mortgage by Minor—Estoppel.**

A minor is not estopped to set up his infancy as a defense to a mortgage by the fact that at the time of its execution he represented that he was of age. Conrad v. Lane, 26 Minn. 389, followed.

**Same—Avoidance of Mortgage.**

*Held*, also, that upon the evidence the court was justified, within the rule of Johnson v. Northwestern M. L. Ins. Co., 56 Minn. 365, in declaring the mortgage void.

[1] Reported in 68 N. W. 9.

Appeal by defendant Graff from an order of the district court for Hennepin county, Elliott, J., denying a motion for a new trial. Affirmed.

*Armstrong Taylor*, for appellant.

*S. Meyers*, for respondent.

MITCHELL, J. The complaint is in the ordinary form in the statutory action to determine adverse claims to real estate. In his answer the defendant asserts as his claim to the property a lien under a mortgage executed by the plaintiff. The reply admits the execution of the mortgage, but alleges that it was without consideration; also that plaintiff was a minor when he executed the mortgage, and that for that reason it was void.

The point is made by the defendant that this was not the proper form of action; that plaintiff ought to have alleged in his complaint the facts which he has alleged in his reply, and asked that the mortgage be adjudged void. This is not in accordance with the decisions of this court. The object of an action under the statute to determine an adverse claim to real estate was stated in Walton v. Perkins, 28 Minn. 413, 10 N. W. 424, to be to force one claiming an adverse claim or lien to establish or abandon his claim; that with respect to the claim of the defendant the position of the parties is the reverse of that occupied by the parties to an ordinary action; that the defendant becomes practically plaintiff, and takes the affirmative in pleading and proof, while the plaintiff becomes practically the defendant, and defends against the claim. And in Walton v. Perkins, 33 Minn. 357, 23 N. W. 527, it was held that any interest in or lien upon land may be determined in such an action. This is in accordance with all the decisions of this court, as well as the uniform practice in this state from the earliest date. State v. Bachelder, 5 Minn. 178 (223); Barber v. Evans, 27 Minn. 92, 6 N. W. 445; School Dist. No. 73 v. Wrabeck, 31 Minn. 77, 16 N. W. 493; Donohue v. Ladd, 31 Minn. 244, 17 N. W. 381; Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Stuart v. Lowry, 49 Minn. 91, 51 N. W. 662; Scofield v. Quinn, 54 Minn. 9, 55 N. W. 745.

On the trial the contest centered entirely on the question whether the plaintiff was entitled to have the mortgage adjudged void on the ground of his minority at the time of its execution. The evidence

was ample to justify the findings that he was a minor when he executed the mortgage, and that he seasonably disaffirmed it after he attained his majority.

The material facts bearing on the other questions in the case were as follows: Plaintiff owned a small farm of 25 acres, which he had inherited from his mother. The farm was occupied and cultivated by his father, and not by the plaintiff, although he lived on it with his father. In 1892 the defendant, who was a dealer in horses, sold a span of horses to the father on credit, and as security for the purchase money took from him a chattel mortgage for $120 on the horses and what few farming implements he had, consisting of an old wagon, an old buggy, some harness, and an old harvester. In 1893, after this mortgage fell due, the defendant, having "camped" in the neighborhood with some horses which he was taking north, sent word to the father, requesting payment. The father having failed to pay, the defendant sent the sheriff to take the property on the mortgage. This being resisted by both father and son, the defendant brought an action in replevin, and took possession of the mortgaged property. Thereupon both father and son came to town to see the defendant about a settlement of the matter. The parties disagree in their testimony as to whether they came in of their own accord or at the instance of an employé of the defendant, named Carpenter, sent out by him for that purpose. The plaintiff and his father came in on July 26, and by the 28th the following result was reached: Defendant retained all the mortgaged property already in his possession (apparently of no great value), discharged the debt against the father, sold and delivered to plaintiff a span of mares, and obtained from him a mortgage on plaintiff's 25 acres for $500, payable in three years, with 8 per cent. interest, and entered into an agreement with plaintiff that he (plaintiff) was to take care of and raise for one year a pair of sucking colts that were with the mares, and that at the end of the year each party should own an undivided half of them, and that whichever took them should pay the other $150. The plaintiff immediately sold both mares and colts to one Brady for $2 cash and his note for $398, payable in a year. It conclusively appears that Brady was wholly irresponsible, and that plaintiff had never seen or heard of him before. It will be seen that the upshot of the whole matter was that when plaintiff came in on

the 26th he owned his farm of 25 acres and owed nothing, and that by the 28th he had a mortgage for $500 on his land, and besides that owed defendant $150 on account of the colts, and had nothing to show for all this indebtedness except a worthless note against Brady for $398.

It clearly appears from the record that plaintiff, although approaching the age of 20 years, was very ignorant, and wholly incapable of intelligently protecting his own interests in any business transaction of importance. It is also very apparent that the same was equally true of his father. The parties disagree as to what occurred during the negotiations from the 26th to the 28th. Plaintiff and his father testify that during that time defendant took them into saloons, and plied them with liquor until they became incapable of transacting business; that the terms of the settlement were all agreed on before they ever saw the horses which defendant was to give the plaintiff; that when plaintiff and his father saw the horses which defendant proposed to deliver they objected, and declined to receive them, because they were of too light weight for a farm; that defendant insisted on their taking them, and promised to find plaintiff a purchaser for them if he did not wish to keep them; and that it was defendant's employé, Carpenter, who produced Brady as such purchaser. Defendant, corroborated by some other evidence, denies all this, and testifies that he never gave them any liquor, that they had seen and agreed on the span of mares before the settlement was closed, and that he had never seen or heard of Brady, and had nothing whatever to do, directly or indirectly, with bringing about the sale to him by plaintiff.

It also appears that during the progress of the negotiations it was brought to defendant's knowledge that plaintiff's stepmother claimed that he was not of age. Plaintiff and his father testify that defendant told them to tell the attorney who was to draw the mortgage that the plaintiff was of age. On the other hand, defendant, corroborated by the attorney, testifies that the question of plaintiff's age was called up in view of what the stepmother had stated, and that both plaintiff and his father positively asserted that he was of age, and offered to make an affidavit to that effect. The facts, however, are undisputed that before the mortgage was executed the question of plaintiff's minority was called to defendant's notice, and that

he took no steps to ascertain the facts except to inquire of plaintiff and his father, and elicit their assertion that he was of age. There is no evidence as to the value of the mares except defendant's statement in his testimony that they were well worth $450. As they only weighed 1,050 to 1,100 pounds each, they must have been well-bred stock to be worth that much, in view of the depressed condition of the market at that time. Plaintiff himself had no use for horses at that time, much less of any such high-priced stock,—a fact which defendant must have known.

The court ordered the note and mortgage canceled on condition that plaintiff deliver to defendant the $398 note against Brady. We are of opinion that, even leaving out of consideration those facts upon which the evidence was conflicting, the decision of the court was entirely correct.

The plaintiff was not estopped to set up his infancy because of his false representations as to his age. Conrad v. Lane, 26 Minn. 389, 4 N. W. 695. Without stopping to inquire whether there may not be exceptions to this general rule, there are no facts in this case to make it exceptional. The burden was on the defendant to show that the contract was a fair and reasonable one, and free from fraud and overreaching on his part. Johnson v. Northwestern M. L. Ins. Co., 56 Minn. 365, 57 N. W. 934, and 59 N. W. 992. This, in our opinion, he has not done. When the manifest ignorance, business incompetency, and financial condition of the father and son are considered, the transaction would have been morally, if not legally, unfair and overreaching, even if both of them had been of age. Defendant must have known that the deal was a most improvident one for people in their situation. Neither of them—the son especially—had any use for such high-priced horses. With their limited means, to incur such an amount of debt meant probable financial ruin. The old horses taken on the chattel mortgage would, so far as appears, have been sufficient for the purposes of the father on the little 25-acre farm. If defendant had been actuated merely by an honest purpose to secure his debt against the father, and by a proper regard for the interests of the parties, he would have been much more likely to have proposed taking a mortgage on the land to secure that debt, and return the property taken on the chattel mortgage, than to sell them a high-priced team, and load them with such a burden of debt. The

entire transaction tends to show that defendant's aim was to use the strait in which they were placed for the purpose of securing an advantageous sale of another span of horses, on terms which he must or ought to have known were exceedingly improvident on the part of this boy, even if he had been of age. The court did the defendant no injustice in ordering the mortgage canceled on condition of plaintiff's giving him all he had ever received out of the deal. In view of some things said in the briefs, it is but justice to say that there is nothing in the record that in the slightest degree reflects on the conduct of defendant's attorney who drew the mortgage.

Order affirmed.