CHAUNCEY J. BLAIR, Appellant, v. CYRUS HEMPHILL *et al.* (Two cases of same parties.)

**Quieting Title:** AGAINST LIENHOLDER. Under Code, section 4223, providing that the action of quieting title of real property may be brought against any person "claiming title thereto," an action to quiet title can be maintained against a mere lienholder.

ADJUDICATION. A decree in an action to quiet title rendered against a lienholder having the right to redeem from a prior incumbrance through which the plaintiff acquired title by foreclosure proceedings, constitutes a bar to the lienholder's right to maintain an action to redeem from such incumbrance.

CLOUD ON TITLE: *Equity jurisdiction.* A court of equity, in the absence of statute, has inherent power to remove a cloud from the title of real estate at the suit of one in possession.

**Service of Notice:** RETURN: *Affidavit.* That a notary public in writing the jurat to an affidavit of service of an original notice, utilized affiant's signature to the affidavit as a part of the jurat, does not render the proof of service defective.

*Appeal from Adair District Court.*—HON. JAMES D. GAMBLE and A. W. WILKINSON, Judges.

SATURDAY, APRIL 14, 1900.

ACTION in equity by a mortgagee to effect redemption from a prior mortgage which had been foreclosed. From a decree in defendants' favor, plaintiff appeals.—*Affirmed.*

*H. E. Long* for appellant.

*John A. Storey* for appellees.

WATERMAN, J.—These appeals are in the same case. In the first proceeding the appeal was taken from an order

sustaining a demurer to the reply. After this was done, the reply was amended by adding another division. A trial was then had on the merits, and plaintiff took a second appeal from an adverse decree. The controlling questions are the same in each case. Therefore we shall not attempt to distinguish the appeals further, in the course of what we have to say. The facts which give rise to the controversy are as follows. One Allie Clark being the owner of the land in question, mortgaged it on September 25, 1883, to James L. Lombard, to secure payment of the sum of five thousand dollars, with interest. This instrument was duly recorded. In October, 1886, Clark executed his promissory note to one C. B. Blair for the sum of ten thousand dollars. This note being guarantied by one Moore Conger, Clark executed to said guarantor a mortgage upon the land mentioned, to indemnify him. This mortgage, also properly recorded, is the one under which plaintiff is now asserting rights. The Polk County Savings Bank became the owner of the Lombard mortgage, and defendant Hemphill, through dealings with Clark, acquired an interest in the land. In March, 1889, the bank began forecloseure proceedings on its mortgage, but neither Moore Conger or plaintiff was made a party thereto. Plaintiff also began an action early in 1889 to foreclose his mortgage, and in this proceeding the bank was not made a party. In August, 1889, a decree of foreclosure was rendered in the action brought by the bank, and a decree foreclosing plaintiff's mortgage was also entered at the same time. A special execution was issued under both decrees on the same day. The real estate was duly sold under the writ issued on the decree in favor of the bank on October 8, 1889, and plaintiff's execution was returned unsatisfied. The bank was the purchaser at this sale, but the certificate was afterwards assigned to defendant Hemphill, to whom a deed issued October 9, 1890. Thereafter Hemphill brought an action to quiet title against plaintiff, and a decree in his favor was

rendered January 13, 1894. On December 23, 1897, this action was brought by plaintiff to redeem from the Lombard mortgage on the ground that his rights as a junior incumbrancer had never been cut off. It is apparent from this statement that, if the decree in the action brought by Hemphill against plaintiff to quiet title is effective, the latter has no standing in court. Of the many matters discussed in argument, we need consider but two, which are in the nature of objections to this decree.

II. First it is said that an action to quiet title will not lie against a mere lienholder; that Hemphill, in order to protect his title against plaintiff's claim, should have brought an action to foreclose the latter's right of redemption. In support of this contention plaintiff cites two decisions of this court, the first of which was rendered under the Code of 1851, and the other under the revision of 1860. A glance will serve to show that, by the terms of these statutes, the action to quiet title was materially different from what it is now, and has been since the adoption of the Code of 1873. In *Fejervary v. Langer,* 9 Iowa, 159, the case went off on the ground that the judgment was by default, and there was no allegation in the petition that the claims of defendants were not superior to that of plaintiff. In the opinion, however, we find this very significant language: "It is not to be denied that the claimant may resort to a court of equity to extinguish the lien of a judgment, and to have his title in the land quieted against disturbance by the owner thereof." In *Eldridge v. Kuehl,* 27 Iowa, 160, while language is used, to the effect that an action to quiet title will not lie against a mere lienholder, we must look to the issues to determine what force and effect should be given such an expression. The statement of the issues in that case, as given by the court, is as follows: "Ordinary action for the recovery of real property. * * * Answer in denial; also, averring title in defendant by virtue of a tax deed; also, setting up and relying on the statute of

limitations." While it is true that the provision for pro-
ceedings to quiet title appears in the revision of 1860 under
the general head of "Actions for the Recovery of Real Prop-
erty," such action was specially provided for and regulated
by sections 3602-3605 of that chapter; and it seems mani-
fest, from the facts stated, that the action in the *Kuehl Case*
was not brought under these sections. Indeed, it was in no
respect equitable in its nature, for it was tried to a jury.
But, if we were to concede that, under the Code of 1851
and the revision, this action would not lie, save against one
claiming title, it does not follow that such is still the case.
An action to quiet title is now an equitable proceeding in
the nature of a remedy *quia timet,* and the rule is without
exception that by bills of that character clouds of every
description may be removed from titles. See cases cited in
17 Enc. Pl. & Prac. 277. Some force is claimed by appel-
lant for the language of section 4223, which provides who
may bring an action to quiet title. The section reads, "An
action to determine and quiet the title of real property may
be brought by any one, whether in or out of possession, hav-
ing or claiming an interest therein against any person claim
ing title thereto though not in possession." It is argued
that this expressly provides that the action can be brought
only against one who claims title. This is a very narrow
construction of a statute, giving an equitable remedy. But
the following section shows, as we think, that the language
quoted has no such restricted meaning. It provides that the
petition shall pray that the defendant be barred and estopped
from having or claiming *"any right"* adverse to plaintiff.
Our attention has been called to no case in this court where
the question here presented has been raised under the stat-
ute as we now have it. But we find a decision in which a
plaintiff was awarded a decree against a mere lienholder.
*Anderson v. Plow Co.,* 101 Iowa, 747. There the decree
rendered quieted title against an apparent lien by attach-
ment. So, also, in *Wood v. Brown,* 104 Iowa, 124, the ac-

tion was to quiet title against a mortgage lien; and plaintiff was not successful, so far as appears, only through failure to prove title on his part. Under statutes enacted with a similar purpose in other states, we find the decisions uniform in sustaining a plaintiff's right to thus remove a cloud. *Alt. v. Groff,* 65 Minn. 191 (68 N. W. Rep. 9); *Davenport v. Stephens,* 95 Wis. 456 (70 N. W. Rep. 661), and cases cited. There is another, and it seems to us an unquestionable, ground on which we might rest our holding that the decree in the action to quiet title cut off plaintiff's right of redemption. A court of equity, in the absence of statute, has inherent power to remove a cloud from the title of real estate at the suit of one in possession. Story, Equity Jurisprudence, 826; *Cleland v. Casgrain,* 92 Mich. 139 (52 N. W. Rep. 460); *Corey v. Schuster,* 44 Neb. 269 (62 N. W. Rep. 470), and authorities cited. Although this proceeding were conceded to be improperly entitled, if the court found, as it must, that any claim or right of plaintiff should be cut off, and his apparent lien removed, it would be a valid and effective decree, irrespective of the statute. The manner in which the action was entitled would not affect the decree.

III. Another contention of plaintiff is that it does not appear that the original notice in the action to quiet title was ever served on him, and the district court therefore lacked jurisdiction to render any decree therein. Plaintiff was a resident of the city of Chicago, Ill., at the time that suit was instituted. He testified that he had no recollection of the service of notice upon him. An original notice is on file, purporting to have been served on plaintiff by one W. D. Norton, and Norton testifies that he did so serve it. The objection made to this notice by appellant is that there is no proper return of service; that such a return should be verified by affidavit and Norton's name is not signed to the purported affidavit, which appears thereon. Norton, who is a witness, testifies positively that he served the notice on

plaintiff, and swore to the return after affixing his signature to the affidavit. Passing the question as to what effect should be given the trial court's finding that notice was duly served, we shall look to the facts here, to see what warrant there is for the claim made by appellant that no proper return of service was made. We have first Norton's testimony that he signed the affidavit. The notice itself is before us, with the original return thereon, and an amended return by Norton attached thereto. We have inspected this paper, and have no doubt of the utter groundlessness of plaintiff's claim. The return on the original notice is as follows (we reproduce its form as far as possible):

"State of Illinois—Cook County, S.S.

"I, W. D. Norton on oath say that this notice came into my hands 1893 and that I personally served the same on the within named Chauncey J. Blair by reading the same to him and delivering him a copy of the same in Chicago in Cook County, Illinois on the 17 day of Nov., 1893.

"Subscribed and sworn to before me by W. D. Norton this 17 day of Nov., 1893.

"J. H. Poage,
"N. P. in and for Cook County,
"Illinois."

Norton's name is in a manifestly different handwriting from that of the jurat. When we take Norton's evidence in connection with the appearance of this return, and the similarity of his signature with that on the amended return, we have no doubt but that he signed this affidavit, and that plaintiff's contention in this respect is founded only on the fact that the notary public, in writing the jurat, utilized the name of the affiant as a part thereof. Norton's name was a part of the affidavit, and not of the jurat. Omitting it from

the latter would not affect the validity of the affidavit. *Kirby v. Gates,* 71 Iowa, 100.

The proof of service was in proper form, the district court had jurisdiction of the action to quiet title, and the decree rendered was operative to cut off all right of plaintiff. This is sufficient to dispose of plaintiff's claim that he is not estopped in this proceeding by such decree, and it dispenses with any necessity for our considering the matters argued relating to the terms of redemption. Neither is it necessary, in view of our holding, for us to pass specifically on the motions filed.—AFFIRMED.