ANNIE WINTERBERG, FORMERLY ANNIE RYCKMAN, SUING FOR THE USE AND BENEFIT OF GEORGE W. LYNN v. JOHANNES VAN DE VORSTE.

Opinion filed June 22, 1909.

**Mortgage Foreclosure — Sale of Sheriff's Certificate by Executor — Right to Assign.**

1. An executor may sell and assign a sheriff's certificate of foreclosure held by him as executor, and a sale legally and regularly so made conveys all the interest therein of the devisees under the will of which he is executor.

**Mortgage Foreclosure — Death of Mortgagee Pending Advertisement — Purchases from Devisees — Fraud — Equity.**

2. A proceeding for the foreclosure by advertisement of a real estate mortgage was commenced in the name of the mortgagee by her attorneys. While the advertisement was running the mortgagee died. At the sale the land was bid in by the attorneys and the sheriff's certificate of sale issued in the name of the mortgagee. Such certificate was subsequently assigned by the executor for a valuable consideration to a third party, who had no knowledge of any defect in the proceedings, and who, after taking the sheriff's deed, conveyed by warranty deed to appellant. The papers and records in the foreclosure proceeding disclose no defect therein. The mortgagor abandoned the premises on, giving the mortgage, and never paid any interest, taxes or principal, and knew of the foreclosure and affirmatively acquiesced therein, and in the title and possession of the appellant for years.

*Held*, that a party who, for a nominal consideration, and by misrepresentation, secures quitclaim deeds from the devisees under the will of the mortgagee after the final account of the executor had been approved and the proceeds of the sale of the certificate had been distributed to and accepted by such devisees, who when executing such deeds claimed no interest in or title to the real estate in question, took no title by such conveyance.

*Held*, further, following the authority of Higbee v. Daeley et al., 15 N. D. 339, 109 N. W. 318, that such party, by deed from the original

mortgagor, obtained for a nominal consideration and through misrepresentation of the condition of the title to the premises attempted to be conveyed, acquired no title which a court of equity will protect.

Appeal from District Court, Emmons County; *Winchester*, J.

Action by Annie Winterberg suing for the use and benefit of George W. Lynn, against Johannes Van de Vorste. Judgment for plaintiff, and defendant appeals.

Reversed.

*N. A. Armstrong* and *John H. Perry*, for appelant.

Sheriff's certificate is personal property and foreign executor had jurisdiction over it. Joy v. Elton, 83 N. W. 875, 9 N. D. 428

The various deeds are void for champerty. Revised Codes 1905, Sec. 8733; Brynjolfson v. Dagner, 109 N. W. 320; Galbraith v. Payne, 12 N. D. 164; Schneller v. Plankinton, 12 N. D. 561.

No claims can be made thereunder. Higbee v. Daeley, 109 N. W. 318; Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Shelby v. Bowden, 94 N. W. 416.

*George W. Lynn*, for respondent.

Death of mortgagee revoked attorney's authority to foreclose. Brown v. Skotland, 12 N. D. 455, 97 N. W. 543; Scruggs v. Driver, 31 Ala. 274; Harper v. Little, 11 Am. Dec. 25; McDonald v. Hannah, 51 Fed. Rep. 73.

Action prosecuted in name of original grantor for beneficial, plaintiff, is not champertous. Galbraith v. Paine et al., 12 N. D. 164, 96 N. W. 258; Schneller v. Plankinton, 12 N. D. 561, 98 N. W. 77.

SPALDING, J. This is one of the cases now becoming very numerous in the courts of this state relating to speculation in defective titles to real estate. The facts may be summarized as follows: Annie Winterberg was, on the 1st day of May, 1889, the owner in fee of the S. W. ¼ of section 35, township 130 N., range 77 W., in Emmons county, and on that day executed and delivered a mortgage thereon as security for her note, payable in five years to one Hannah K. Loring, a resident of Massachusetts. This mortgage was recorded on the 5th day of June, 1889, in the office of the register of deeds of Emmons county, and contained a power of sale authorizing the mortgagee, or her agent, to foreclose and sell at public auction in case of default. Default was made by failure to pay the principal or any interest or taxes, and the mortgagee authorized the firm of Herreid & Williamson to foreclose such mortgage.

by advertisement under the power of sale, and accordingly first publication of notice of foreclosure was made, as provided by law on the 23d day of September, 1898. Between the dates of the first and second publications the mortgagee, Hannah K. Loring, died, and, apparently without knowledge of her death, publication of the notice was continued for the full time required by statute, and on the 5th day of November, 1898, the date fixed in the notice for sale of the premises, sale was made by the sheriff of Emmons county, and, Herreid & Williamson, being the highest bidders, the sale was made, and the sheriff's certificate executed in the name of said Loring as purchaser. Such certificate, and the other papers required and customary in such cases, were delivered to said attorneys, and recorded on the 14th day of November, 1898. The death of Hannah K. Loring occurred on the 24th day of September, 1898. She left a last will and testament wherein she constituted John M. Batchelder, of the county of Middlesex and state of Massachusetts the executor thereof. Such proceedings were had in the probate court of Middlesex county that on the 22d day of November, 1899, her will was admitted to probate, and said Batchelder was on the same day duly appointed as executor, and forthwith qualified as such. It also appears that he was appointed and acted after her death, and before qualifying as executor, as conservator of her estate. The certificate of sale went into the possession of said Batchelder as executor, and on the 20th day of February, 1900, he sold and assigned the same for the sum of $457 to one J. E. Horton, by an instrument in writing, which was duly recorded in the office of the register of deeds of Emmons county, on the 30th day of March, 1900. The laws of Massachusetts are pleaded and are offered in evidence, and show that under such law said sheriff's certificate of sale was personal property, and that the executor was authorized to convey the same without procuring an order of sale from the courts of Massachusetts. No redemption was made, and on the 1st day of May, 1900, the sheriff of Emmons county executed and delivered to said Horton the usual sheriff's deed which, it is claimed, conveyed said real estate to Horton. Such deed was recorded in Emmons county on the 1st day of May, 1900, an thereafter, and on the same day, Horton conveyed by warranty deed, which was duly recorded on the 8th day of May, 1900, to the defendant and appellant herein, who since that time has been in exclusive possession of the premises. Annie Winter-

berg abandoned the premises at or about the time of the execution of the mortgage, and, although she knew of the foreclosure proceedings, never raised any objection thereto, or made any claim of their invalidity, or that she retained any title in the premises. On the 13th day of April, 1905, on the representation and at the request of George W. Lynn, for whose use and benefit this action is brought, for the consideration of $20, Annie Winterberg quitclaimed said premises to one Wetherby, and it is alleged that she did so by reason of the promise made by Lynn, acting for Wetherby, that he would not disturb the title or possession of appellant; that such promise was false, and was fraudulently made for the purpose of obtaining such deed. On February 8, 1904, Lynn wrote the following letter to said Batchelder: "George W. Lynn, State's Attorney, Emmons County. Linton, North Dakota,. Feb. 8, 1904. John M. Batchelder, Holliston, Mass., Kind Sir: Your favor of the 2d inst. received and contents noted, and your promptness in answering my former letter is appreciated. A client of mine has requested that I pass upon the title of certain tracts of land in this county in which the late Hannah K. Loring had an estate prior to her death. I wish to state at this time that the purpose of my correspondence with you is not adverse in any manner whatsoever to the interests of yourself or of the heirs and devisees of the said Hannah K. Loring but is for the purpose of perfecting a good and unquestionable title to the said tracts. To this end I have advised that, in order to obtain such title, he should secure a certified copy of the will which has been probated in your state, together with quitclaims from the heirs and devisees of the late Hannah K. Loring, all of which should be placed of record in this state. Will you undertake to secure the quitclaims, and in your opinion what will be the cost of securing them, including your services, provided I prepare all papers according to the laws of our state, and you attend to having the same executed? I have this day written the register of probate to ascertain the cost of securing the certified copy of the will, and when I have heard from you, and if everything is satisfactory to my client, I will send for the amount. An early reply will be appreciated, and in any event I will compensate you for your trouble. Yours, Geo. W. Lynn. Dic." And by means thereof, and on payment of $2.50 to each devisee, obtained quitclaim deeds from all the devisees under the will of said Hannah K. Loring to Wetherby, who thereafter deeded to Lynn by quitclaim deed.

Neither Lynn nor Wetherby have ever been in possession of nor received any rents or profits from said real estate. Annie Winterberg has at all times since the execution and delivery of such mortgage been an actual resident of the state of North Dakota. The answer demands affirmative relief, that said certificate of such foreclosure sale, and all foreclosure proceedings, be reformed to show said Batchelder as executor to be the purchaser at said sale, and that the same be held valid and be confirmed, and that said sheriff's deed be validated, and that the defendant and appellant be adjudged to be the owner in fee of such real estate, and for general relief. On the trial evidence was received showing the circumstances and facts surrounding the several transactions, most of which are in harmony with the statements of the answer. The court entered judgment against the defendant, adjudging that plaintiff is the absolute owner of the premises described, and quieting title in him, and directing the issuance of execution to place him in possession thereof, and for costs. From such judgment defendant appeals, and demands a trial de novo in this court.

It affirmatively appears from the testimony of Annie Winterberg, the mortgagor, that she abandoned the mortgaged premises, and surrendered the same immediately after executing the mortgage, and that she has never since made any claim to title therein. When Lynn called upon her and requested her to sign the previously prepared deed running to Wetherby, he informed her that he sought it to make the title a little clearer. She told him that she did not know that she had any claim on it any more. He informed her that she had a little claim on it yet. She testifies that at that time she made no claim to any interest in it, and that she told Lynn that she did not want to take the land from Van de Vorste, the defendant, and that if it did not interfere with him (Van deVorste) then she was willing to sign the deed, and that Lynn informed her that it would make no difference to Van de Vorste, but would just clear up the title a little; that she first learned that it did interfere with Van de Vorste and his title not a great while after that; that she would not have executed the deed had she been informed that it would interfere with Van de Vorste's interest and title; and that she relied upon the promise and statement of Lynn that it would not do so. He concedes that he showed her the five deeds which he had received from the executor, and used them to influence her to execute the deed to Wetherby, and claims that Mrs. Winterberg

was informed or told that Van de Vorste could recover from Horton, the party who took the assignment of the certificate of sale, and to whom the sheriff's deed was issued, the amount he had paid him for his deed. Mrs. Winterberg testifies that no such conversation occurred before she executed and delivered the deed to Lynn, but her testimony leads us to believe that some such conversation may have taken place after the transaction was closed. One Wescott, who drove Lynn to Mrs. Winterberg's place, testified to such a conversation, but he fails to place it before the delivery of the deed. Horton, the assignee of the sheriff's certificate, and the grantor of appellant, testifies that he purchased the sheriff's certificate from Herreid & Williamson, the representatives of the executor, and did so on the representation of Mr. Herreid, who had made the foreclosure, that everything was perfectly in order and all right; that he held a second mortgage on the place, and was considering redeeming from the foreclosure sale in question, but through this advice he discharged his second mortgage, and relied upon the certificate of sale. It is shown that the proceeds of the certificate of sale were received by the executor, Batchelder, and distributed, in the administration of the estate of Hannah K. Loring, to the parties designated in her will, namely, the persons who executed the quitclaim deeds delivered to Lynn through Batchelder, in response to the letter quoted.

It is contended on the part of the respondent that the foreclosure proceedings were absolutely void, and that no title passed, and that title should be quieted in him. Appellant asks for a reformation of the certificate of sale and sheriff's deed, and suggests several reasons why title should not be quieted in plaintiff. We are not aided to any material extent by the brief of either party to this appeal. It will be noted that respondent has not tendered, and does not offer to pay, the mortgage, the interest, or the taxes paid by appellant or his grantors. We have little doubt that on this ground the action should be dismissed, and we might be justified in going no further than reversing the judgment and dismissing the action; but, as this would only result in further litigation, we have concluded to determine the full rights of the parties in the premises. In doing so we find it unnecessary to pass upon the validity of the foreclosure or the right to a reformation of any of the instruments described. We may assume that in a proper proceeding, instituted without unreasonable delay, and by a party

with clean hands, it would be vacated. For a period of nine years, between the execution and delivery of the mortgage and the foreclosure proceedings, the mortgagor asserted no rights over the premises; permitted the mortagee to pay the taxes and institute foreclosure proceedings. She knew of the foreclosure proceedings while they were being conducted. She knew of the deed to Van de Vorste, and that he was in possession of the premises. She acquiesced in all of the proceedings, even to the time of the trial in the district court in May, 1906, seventeen years after she gave the mortgage. She not only acquiesced, but she refused to execute a deed if it would interfere with the interests of the appellant, and only gave the deed on assurances that it would not have such effect. This case does not present facts parallel with those in Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855. In that case the papers and records of the foreclosure proceedings showed on their face that such proceedings were illegal and invalid. In this case nothing connected with the foreclosure proceedings or the record relating thereto shows any defect in the proceedings. If the fact of the death of the mortgagee while the advertisement of sale was running, and the issuance in her name of the sheriff's certificate of sale after her decease, rendered the proceedings wholly void, the invalidity would not be disclosed by any inspection of the record or foreclosure proceedings. As far as they indicated everything was regular and valid. In the Finlayson case the record disclosed the invalidity of the proceedings. A purchaser, examining the record and going to the documentary evidence of the foreclosure, would find nothing to apprise him of any defective proceeding. The effect is evident in this case. Horton was an innocent purchaser so far as any legal notice of a defective foreclosure was concerned. He paid a fair and valuable consideration for the assignment of the sheriff's certificte. Such certificate was personal property, both in this state and in Massachusetts, and the executor had a right to assign it. Horton deeded, for a valuable consideration, to the appellant, who was apprised of no defect in the proceedings or title. He took possession under his deed in good faith. To hold with respondent, after the lapse of so many years during which the mortgagor, as shown by the record, has not only affirmatively acquiesced in the foreclosure, but disclaimed, and still disclaims, any interest in the premises, and told Lynn so when he procured his deed, would open wide the doors of the courts

to fraud and deception, and be contrary to equity and good conscience. The equities are so plain that we shall not take the trouble to cite numerous authorities.

In Higbee v. Daeley et al., 109 N. W. 318, 15 N. D. 339, this court held that one who seeks to have a sale, under proceedings regular on their face, adjudged void must show affirmatively that he asserted his rights promptly after the discovery of the facts. In that case a foreclosure was conducted in the name of the original mortgagee after it had assigned the mortgage; the assignment never having been recorded. The property was bid off by the assignee of the mortgage, and a sheriff's deed issued to such assignee. The record disclosed an absolutely perfect title in the holder of the sheriff's deed, and the defendant was a purchaser in good faith, as in the present instance. The court says: "It is also apparent that the defect is not one which could, under the circumstances of the case, cause any actual loss or prejudice to the plaintiff or any one else. There was a default which authorized a foreclosure, and the actual owner of the debt caused the apparent foreclosure to be made, and reaped the fruits thereof. The owner of the fee, or any other person entitled to redeem, were given the same notice of the sale, and had the same right to redeem, as they would have had if the foreclosure had been made in the name of the assignee of the mortgagee." These were among the reasons given for holding the mortgagor, or plaintiff in that case, to the use of reasonable diligence to avoid the sale. The plaintiff did not commence his action for twelve years after the sale, and ten years after the time the entire debt due under the mortgage matured; and, although it is not affirmatively shown that he had actual knowledge of the sale, it was held that: "If the plaintiff knew of the facts as to the real ownership of the mortgage before third parties acquired rights, but nevertheless permitted this apparently valid sale to stand unchallenged, he is manifestly in no position to invoke the aid of a court of equity. His continued silence under such circumstances would be equivalent to a fraudulent concealment which would estop him to deny the rights of innocent purchasers." In the case at bar the plaintiff and his attorneys knew all about the defective sale. Williamson conducted it; was attorney for the executor, and also attorney for plaintiff in the trial of this case in the district court. See, also, Johnson v. Erlandson, 14 N. D. 518, 105 N. W. 722. Bausman v. Faue, 45 Minn. 412, 48 N. W. 13, is directly

in point.  In that case foreclosure proceedings regular in form were completed in the name of a mortgagee who had died before they were instituted, and the question of title between the grantees of the mortgagor and those of the purchaser at the foreclosure sale was involved, and it was held that the holder of the land through the foreclosure, who had purchased in good faith for value, and who, with his grantors, had been in possession for many years, was entitled to the equitable protection of the court, unless the plaintiff had been without fault, and that where the owner  knew  that his title appeared of record to have been divested, and remained quiescent for many years until the equities of bona fide purchasers of the record title had intervened, a court of equity would regard his laches, and where the delay appeared to be from a purpose to abandon the land to incumbrancers, that would constitute laches as respects innocent purchasers, and the court reversed the judgment entered in favor of the party guilty of laches, namely, the one holding under the mortgagor.

For these reasons we are of the opinion that the  trial  court erred in quieting title in respondent.  We might rest our opinion on other grounds.  It is suggested that the facts in this case bring it within the rule of Gates v. Kelley, 15 N. D. 639, 110 N. W. 770, but as this is only touched upon in the brief, we shall pass it, as well as the question of the deed being given when the grantor had not been in possession or received rents or profits for many years.  It is intimated that the deeds from the parties claiming under the will of Hannah K. Loring conveyed title.  They had nothing to deed.  Their interest in the premises in the controversy had been sold by the executor.  They had no legal or other title to convey, and they had received and accepted the proceeds of such sale. It is evident that gross frauds were perpetrated upon all the grantors in procuring the deeds to Wetherby.

The judgment of the district court is reversed, and title quieted in the appellant as to all claims of the respondent  and  parties claiming under or through him.

All concur, except MORGAN, C. J., not participating.