MERCY P. BAUSMAN and others *vs.* LEWIS FAUE.

February 16, 1891.

Mortgage—Void Foreclosure by Advertisement in Name of Deceased Mortgagee—Estoppel of Mortgagors—Acquiescence and Abandonment of the Land—Rights of Bona Fide Purchasers under Foreclosure.—M., owning certain lands, in 1855 executed to H. a mortgage thereon containing the usual power of sale, which mortgage was duly recorded. M. then, in 1856, conveyed the lands to B. and B., by deed duly recorded, and the grantees at the same time executed to M. a mortgage on the lands, which was duly recorded. In 1857 they executed to F. a mortgage on part of the land, which was duly recorded. In 1857 the mortgage to M. was assigned to F. About the same time F. purchased the mortgage to H., though it was not assigned in writing. September 16, 1859, the mortgage to F. was foreclosed. In that year, 1859, the value of the lands being much less than the amount of the incumbrances, B. and B., as found by the court below, "abandoned all of said lands to the incumbrances then outstanding upon and against the same," and never thereafter exercised any act of ownership over, nor asserted any claim to, any of said land, nor paid any principal or interest on the incumbrances on the land, nor paid any taxes; their successors in claim of title paying them from 1885 down. The taxes from 1858 to 1885 were paid by those claiming under the foreclosure of the Hall mortgage. In 1870, the administrator of F. (he having died) attempted a foreclosure under the power of the mortgage to H., G. becoming the purchaser. The certificate was duly recorded, and there was no redemption. The foreclosure was void, because the notice of sale was in the name of H., who was then dead, but upon the record it appeared to be entirely regular. In 1873 G. conveyed to T., and in 1882 T. conveyed to D., through whom defendant claims. Each conveyance was upon a full consideration actually paid at the time, each grantee being at the time ignorant of the defect in the foreclosure, and each, in making his purchase, relied on the apparently perfect record title in his grantor. *Held,* that the mortgage and power of sale, subject to which they held their title, giving color of right to any attempt that might be made to foreclose it and to the record of such foreclosure, it was the duty of B. and B., if they intended to maintain their title against the apparently perfect record title under the foreclosure, to seasonably assert the same by clearing the record of such foreclosure proceedings; and that, upon their failure to do so beyond a

reasonable time, they were estopped to question the validity of the fore-closure as against those who purchased relying upon the apparent record title. *Also*, that, while ignorance of the fact of such foreclosure, if excusable, might excuse delay to assert their title against the foreclosure, ignorance due to their own gross neglect is no excuse.

Appeal by plaintiffs from a judgment of the district court for Hennepin county, where the action was tried by *Lochren*, J.

*Francis G. Burke* and *Geo. M. Bennett*, for appellants.

*Edward Savage* and *E. E. Witchie*, for respondent.

GILFILLAN, C. J.[1] The action is under the statute to determine adverse claims to real estate, the complaint alleging that the plaintiffs are the owners in fee, and that it is vacant. The answer denies the allegations of the complaint, except that defendant claims some right, title, and interest in the real estate; alleges that defendant is the owner; and as a further defence sets forth facts which are substantially found by the court below. That court, trying the case without a jury, found the facts, and as a conclusion of law found plaintiffs to be the owners, subject to equities existing in favor of defendant, and ordered that, if plaintiffs within 30 days should file a stipulation agreeing to pay defendant the consideration paid by him on his purchase of the real estate and the taxes paid by him since such purchase, a further hearing should be had to determine the amount of purchase-money and taxes, and, on payment thereof, judgment should be entered confirming the plaintiffs' title, clear of all claims of defendant; but, if plaintiffs should fail to file the stipulation or pay such amount, judgment should be entered dismissing the action.

The facts found by the court below were, avoiding too detailed a statement, in substance as follows: December 31, 1855, one Moore was the owner of the N. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ and the S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 9, township 29, range 24, containing 120 acres, and on that day he and his wife executed to one Hall a mortgage thereon, containing the usual power of sale, to secure the sum of $277.37, which mortgage was recorded the same day. About July 10, 1857, Theodore E. French purchased this mortgage and the note it secured,

[1] Vanderburgh, J., took no part in this decision.

though it is not found there was any formal assignment.   August 6, 1856, Moore and his wife conveyed the 120 acres to Jacob B. Bausman and Zenas E. Britton, the deed being duly recorded.   August 7, 1856, said grantees executed to said Moore two notes—one for $1,111, due January 8, 1857; and the other for $1,810, due August 7, 1857, —and a mortgage on said real estate to secure the same, which mortgage was on August 7, 1856, duly recorded.   January 27, 1857, Moore assigned this mortgage to one Thomas, and July 10, 1857, Thomas assigned it to Theodore E. French, with the note for $1,810; the other having been paid.   June 27, 1857, said Bausman and Britton executed to French a mortgage containing the usual power of sale upon said S. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ and the N. W. $\frac{1}{4}$ of said S. E. $\frac{1}{4}$, to secure their note to him for $4,000, payable two years from that date, with interest at the rate of 30 per cent. per annum, which mortgage was duly recorded July 8, 1857.   At the time of executing that mortgage French retained from the $4,000 enough to satisfy the said mortgage to Hall and the amount unpaid on said mortgage to Moore, upon the agreement that he might therewith pay said mortgages, or purchase and hold the same for his better security.   June 27, 1857, said Bausman and Britton caused the N. E. $\frac{1}{4}$ of said S. E. $\frac{1}{4}$, in which the real estate in controversy is situated, and part of the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, to be platted as Oakland addition to Minneapolis.   September 15, 1859, the mortgage to French was duly foreclosed under the power of sale, French being the purchaser, except of five acres in the northeast corner of the mortgaged premises.   The certificate of sale was duly recorded, and there was no redemption from such foreclosure.   In October, 1870, an attempt was made by the administrator of French (he having died) to foreclose, under the power of sale, said mortgage to Hall, R. B. Galusha becoming the purchaser.   The certificate of sale was duly recorded November 11, 1870, and there was no redemption.   The foreclosure proceedings were in all respects regular, except that the notice of sale was signed only in the name of Hall, the mortgagee, he having died several years before.   This, as decided in *Bausman* v. *Kelley*, 38 Minn. 197, (36 N. W. Rep. 333,) rendered the foreclosure void, though in that case the fact that the attempt to foreclose was on behalf of the adminis-

trator did not appear. October 8, 1873, Galusha, for a valuable consideration paid, conveyed to one Taft the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, except lots 3 and 4 of block 2 in said Oakland addition, the deed being recorded October 10, 1873. December 8, 1882, Taft conveyed said last-described real estate to one Dunsmoor by deed duly recorded December 14, 1882. From May 30, 1878, till the conveyance to Dunsmoor, a tenant of Taft was in possession of the east half of the real estate so conveyed to Taft. Conveyances of the real estate here in controversy were made from Dunsmoor to Mitchell, from Mitchell to Babcock, and from Babcock to defendant; each of the deeds of conveyance being duly recorded at or about the time of making it. Each of the conveyances was made upon a full consideration actually paid by each purchaser. Neither Taft, Dunsmoor, Mitchell, Babcock, nor defendant had any notice of the defect in the foreclosure of the Hall mortgage, nor of any adverse claim, until long after he had made his purchase and paid the consideration therefor; and each, in making his purchase, relied on the apparently perfect record title in his grantor, shown by the records in the office of the register of deeds. February 9, 1859, said Britton conveyed to said Bausman the undivided half of certain lots, including those here in controversy, in said Oakland addition to Minneapolis, and the deed was recorded July 1, 1859. During the year 1859 the value of the 120 acres did not exceed $20 per acre, the total being much less than the incumbrances on it; and in that year Bausman and Britton (we state it in the words of the court below) "abandoned all of said land to the incumbrances aforesaid then outstanding upon and against the same," "and never thereafter exercised any act of ownership respecting any of said land, nor asserted any claim thereto, nor paid any of said incumbrances, nor any interest thereon, nor any taxes on said land till the year 1885." For the taxes for the years from 1858 to 1865 the lands were at tax-sales declared forfeited to the state, and in the latter year the auditor of the county assumed to convey the lands, for the aggregate amount of the taxes and costs, penalties, and charges, to one Walker. The auditor's deed was recorded September 22, 1865, but from defects in its recitals it was void. Walker, in 1866, quitclaimed to Galusha by deed recorded December 22, 1866;

and since that time till the year 1885 the taxes were paid by Galusha and his grantees, including defendant. Jacob Bausman died intestate in 1882, and whatever title he then had is held by plaintiffs. The real estate is vacant.

In the briefs and on the oral argument much space was given to discussing the question whether an action under the statute to determine adverse claims to real estate is to be deemed a legal action, and the issues tried and determined upon the rules and principles of law, or an equitable action, in the determination of which equitable principles are to be applied. The court below seems to have acted on the latter proposition. Of course, in a strictly legal action involving only legal titles, in which the only question is, which party has the legal title, no such condition to the relief to be granted as was imposed in this case would be proper. The action is anomalous. No such action could be maintained at the common law; no bill in equity alleging only the facts necessary to a complaint in this statutory action could be supported. The statute does not indicate to which class the action is to belong. Perhaps (though we do not decide the point) it is to be deemed legal or equitable, according as the issues present legal or equitable rights or titles to be determined. In *Morris* v. *McClary*, 43 Minn. 346, (46 N. W. Rep. 238,) where legal titles only were involved, it was spoken of as a legal action. It has also been regarded as equitable. It is not necessary to determine what its character is in this instance, for the facts found make out a defence equally available at law or in equity.

The plaintiffs cannot complain that the court granted them relief conditionally, which it ought to have denied *in toto*. Upon the facts found the court ought to have decided that the plaintiffs were estopped from asserting their title against defendant. The estoppel arises from the delay of plaintiffs and their predecessors in title to question the validity of the foreclosure of the mortgage to Hall, and their permitting to remain of record apparently perfect evidence of title through that mortgage, for 15 years before the defendant purchased, and from the fraudulent consequences to defendant of that delay, if they are now permitted to assail the foreclosure.

The proposition that a party is estopped from asserting a right implies fault on his part. There can be no estoppel without some fault of the party estopped. If the estoppel is claimed by reason of his omission to do some act, it must appear that it was his duty in equity and good conscience to do such act, otherwise his omission is not a fault. In this case the question is, was it the duty of plaintiffs' predecessors, if they were not content to abide by the attempt to foreclose the Hall mortgage, and the putting upon record evidence of apparently perfect legal title through that mortgage, to interpose with proper diligence, and prevent innocent third persons being deceived thereby to their prejudice? The appellants contend that it was not, because that attempt was unauthorized and void. They have referred to a vast number of decisions as bearing upon the question of estoppel. In very many of these the question is not discussed nor alluded to at all; in many others, what we regard to be the controlling consideration in this case upon the owners' duty in the premises was wanting. No case cited was like this. Many cases, of which *Meley* v. *Collins*, 41 Cal. 663, is an instance, hold, what we suppose may be conceded as a general proposition, that the owner of the land is under no obligation to assail a hostile title asserted to his land. Others, of which *Chandler* v. *White*, 84 Ill. 435, is one, hold, what may also be conceded, that the owner is under no obligation to proceed against a forged deed of his land, placed on record, but may bide his time, trusting to his legal title. Some, like *Requa* v. *Holmes*, 26 N. Y. 338, hold that the owner is not estopped by a decree for a sale and a sale in an action to which he is not a party. There are others to the effect that, where a deed was stolen from the grantor, or its possession fraudulently got by the grantee, or the grantee had altered the deed so as to make it void, a *bona fide* purchaser was in no better condition than his grantor. Leaving out of account the elements of estoppel, these latter cases are correct. Some authorities seem to make a distinction on the matter of estoppel between a deed that is void and one that is only voidable, holding that the latter may and the former may not be the basis of estoppel. In *Pence* v. *Arbuckle*, 22 Minn. 417, we refused to consider whether the deed was void, holding the grantor named in it estopped to deny its validity. In *Merchant* v.

*Woods,* 27 Minn. 396, (7 N. W. Rep. 826,) where the foreclosure was undoubtedly void, the mortgage having been paid, the court, on page 401, (7 N. W. Rep. 828,) states as reasons, in addition to those under the registry law, why the mortgagor should not prevail against the purchaser at the mortgage sale, the exact conditions that make an estoppel, though the opinion does not call it such.

The foreclosure of the Hall mortgage was void for a reason not disclosed by the record. Notwithstanding its invalidity, it might be the basis of estoppel against the owners who held their property subject to the mortgage; or rather they might be estopped to deny its validity. Had they expressly affirmed its validity to one who they knew was about to purchase the foreclosure title, and who, relying on such representation, and not knowing the defect, purchased it, they would not be permitted to assert their title against him. This would be so, not on the ground that they ratified the void act or proceeding, but on the ground that, having failed to assert their title against it when honesty and good conscience required them to assert it if they claimed any, they would be estopped to assert it to the prejudice of the one thus relying on their representation. And this would be so whether they knew of the fact rendering the foreclosure void, or were ignorant of it through their own gross neglect. Silence and acquiescence, when good faith requires a person to speak or act, are, in the matter of estoppel, equivalent to express affirmation.

Standing, in respect to the property and the mortgage, in the relation that they stood in, was it the duty of the owners Bausman and Britton, if they intended to protect and hold their title against the mortgage, to know whether an attempt was made to foreclose it, and, if so, whether the attempt was valid or voidable or void, and seasonably to object that it was voidable or void by proceedings to clear from the record the evidences of it? If the record evidence did not disclose any defect in the foreclosure, but made an apparently perfect title under the mortgage, we think it was, not merely because they were owners of the land. It must be conceded that an owner of land is not necessarily bound to clear from the record a cloud put upon his title by the unauthorized act of another. This is so where he has done nothing to give apparent color of right to such act.

In such case the owner may, if he choose, rest on his title, and wait till the adverse title is asserted against him. That would be so in the case of a forged deed or mortgage placed on record, to which no act of his gave suggestion of authenticity. In this case the evi-dence of title in the purchaser at the attempted foreclosure is appar-ently by authority of the authentic mortgage and power of sale. They gave record color to the foreclosure, (though it was void.) But for them the party attempting the foreclosure could have done nothing to affect the title. They made the void proceedings, and the rec-ord of evidence of those proceedings, have the apparent effect to pass the title of the mortgagor and those claiming under him. In other words, a part of the record which appears to pass the title was by authority of the mortgagor, and the remainder was apparently so. He was bound to anticipate that, in case of default, an attempt might be made to foreclose under the power, and that evidence of what was done might be placed on record, so as to make it appear that under and by virtue of his mortgage and power his title had passed to the purchaser at the attempted foreclosure. French was the owner of the mortgage, and upon his death his administrator had a right to a foreclosure under the power; but because there was no formal assignment to French, the administrator could not fore-close in his own name. The legal title to the power was in Hall, and, on his death, in his executor or administrator; but it was held in trust for French or his administrator, who could require the party holding it to execute it and enforce the security, or could exe-cute it himself in the name of such party. *Bottineau* v. *Ætna Life Ins. Co.*, 31 Minn. 125, (16 N. W. Rep. 849;) *Carpenter* v. *Arti-sans' Savings Bank*, 44 Minn. 521, (47 N. W. Rep. 150.) But by reason of using the name of Hall, who was dead, instead of the name of his executor or administrator, the attempt to foreclose, though made by an authorized person, was void. The mortgagor was not bound to anticipate that just that mistake would be made; but we do not think it is going too far to say he was bound to anticipate that, when the attempt to foreclose came to be made, he might have valid objections against it; that it might furnish occasion and neces-sity for him to act, and assert and maintain his title against it; and

that, by reason of the record not showing any such objection, and of his omission beyond a reasonable time to make objection to the foreclosure, the natural inference of persons knowing only what the record disclosed, would be that there were no valid objections. With respect to the mortgage as a lien on the land and as a means of passing the title, Bausman and Britton stood in the shoes of the mortgagor, as though the mortgage had been theirs. The rights that he held, and the duties he was under, as connected with the title, passed to them. Ignorance of the fact that the foreclosure had been made, if excusable, might excuse delay, but if in consequence of their abandonment of the land, and utter disregard of and indifference to what might become of it, would not. They are to be charged with knowledge of whatever reasonably diligent attention to their rights would have brought to their notice. In "abandoning the land to the incumbrances" plaintiffs' predecessors must have understood and expected that the power of sale would be exercised, and that the records might show that their title had been divested. What they must have anticipated actually occurred, and by reason of it the rights of innocent purchasers have intervened. They never intended to redeem, or to oppose the acquisition of their title by others under the mortgage. If they had notice of the apparently valid record title derived by the attempted exercise of the power, they should have taken steps to clear the record by which innocent purchasers were likely to be deceived; or, as against such purchasers, they should now, after so long, be deemed estopped to deny the validity of the foreclosure. If they did not acquire knowledge of the facts, their ignorance is due to their intention to abandon the land to whomsoever might acquire it under the mortgage; to their neglect, not only of their own rights, but of their duty to the state. Presumably the land was assessed, as it should have been, in the names of those having the apparent record title; and if they had attended to their duty to pay taxes on the land, they would have discovered the facts. Such being the case, notice is imputable to them.

Judgment affirmed.