JOHN DIMOND v. JOSEPH A. MANHEIM and Others.[1]

May 24, 1895.

Nos. 9300—(131).

**Invalid Foreclosure—Estoppel of Mortgagor.**

The plaintiff executed a mortgage on real property containing a power of sale. Upon default in its conditions, the assignees of the mortgage assumed to exercise the power of sale, and bid in the premises for the amount of the debt, which was more than the land was then worth. The foreclosure was in fact invalid, because of a mistake of the register of deeds in recording the names of the assignees of the mortgage. The plaintiff at the time knew of the foreclosure sale, but for nearly 20 years thereafter asserted no claim to the land, acquiesced in the foreclosure, abandoned the land, and exercised none of the rights and performed none of the duties of ownership. In the meantime the land was several times conveyed for value to purchasers who had no actual knowledge of the defect in the foreclosure, and during all this time the purchasers at the foreclosure sale and their grantees in good faith claimed title, and paid all the taxes on the property. After the lapse of about 20 years, after the land had increased in value threefold, and after both the mortgage and the debt secured thereby (which he had never paid) were barred by the statute of limitations, the plaintiff brought this action against the holders of the foreclosure title to have it adjudged that the foreclosure was invalid, and that the defendants had no interest in the land. *Held*, that plaintiff is estopped by his conduct from now asserting the invalidity of the foreclosure; also, that, upon the facts of this case, the fact that the defect in the record of the assignment of the mortgage might have been discovered by an examination of the records in the register's office will not prevent the defendants from insisting on such estoppel.

Appeal by defendants from a judgment of the district court for St. Louis county, entered in pursuance of an order for judgment by Moer, J. Reversed.

*Cash, Williams & Chester* and *Thomas L. Kennan,* for appellants. *J. W. Bull,* for respondent.

MITCHELL, J.    This is an action to have adjudged void certain foreclosure proceedings, which are the basis of defendants' claim of title to certain real estate, and to have it decreed that defendants

[1] Reported in 63 N. W. 495.

have no title or interest therein. The trial court found as a conclusion of law that the plaintiff was the owner of the land, and that defendants had no title to, interest in, or lien upon it; and the only question presented by this appeal is whether this conclusion of law was justified by the findings of fact.

These findings, so far as here material, are as follows: In October, 1873, the plaintiff, then the owner of the land, executed to one Perkins a mortgage thereon to secure the payment of two promissory notes,—one for $125, payable in 60 days; and the other for $470, payable in a year,—both bearing interest at 10 per cent. per annum until paid. This mortgage, which contained the usual power of sale, was duly recorded. In January, 1874, Perkins assigned these notes and mortgage to John Mitchell, and Claus H. Watke. The assignment was filed for record, and, when returned to the assignees, had indorsed upon it the certificate of the register of deeds that it had been so recorded; but, by a clerical mistake of the register, the names of the assignees were recorded "Joseph Mitchell" and "Chas. H. Watke." In July, 1874, the assignees, in ignorance of the mistake of the register, proceeded to foreclose the mortgage under the power in their own proper names, and bid in the premises for $727.86, the amount of the debt and costs, which was considerably in excess of the value of the land at that time. A certificate of sale to Mitchell and Watke, in regular form, was executed and recorded. Plaintiff, who was a resident of Duluth, where the foreclosure proceedings were had, knew that they were being carried on; and, within a month or two after the sale, was inquired of by the attorney of the assignees of the mortgage whether he would redeem. Plaintiff continued to reside in Duluth until May, 1877. During the next two years he resided part of the time in Dakota, and part of the time in Moorhead and Brainerd, in this state, and on one occasion made a visit in Duluth of three weeks. In May, 1879, he removed from the state, but returned to Duluth in May, 1889, where he has ever since resided. From the time of the foreclosure sale, in 1874, up to the time he commenced this action, in 1894 (almost 20 years), the plaintiff paid no attention to the land, paid no taxes on it, and neither exercised any of the rights nor performed any of the duties of ownership. During all this time, Mitchell and Watke and their grantees have claimed to own the

property, and have paid all the taxes on it, amounting with interest to $300.

The land has remained vacant and unoccupied. In January, 1886, Watke conveyed his undivided half of the land to Mitchell; and on December 14, 1889, Mitchell sold and conveyed the whole to defendants Manheim and Haag for $1,800, part of which was paid in cash, and the balance, $800, in one year. At the time of this sale, Mitchell delivered to Manheim and Haag the muniments of title to the land, including plaintiff's notes and mortgage, the assignment of the mortgage, and the certificate and affidavits of foreclosure sale. Before purchasing, they procured an abstract of title, but did not examine the records in the register of deed's office. The abstract did not disclose the error in recording the assignment of the mortgage. Within three days after this purchase from Mitchell, upon Manheim and Haag informing plaintiff of the fact, he, in response, stated to them that "he used to own said land," and shortly afterwards he handed them an unrecorded satisfaction of a mortgage which he had executed on the land prior to the Perkins mortgage, saying, "It is of no use to me, and it may do you some good." At this time Manheim and Haag had not yet paid to Mitchell the last $800 of the purchase money; and, assuming that it had not been paid by the foreclosure sale, plaintiff's note, secured by the Perkins mortgage, was still a valid subsisting personal obligation against him, although the right to enforce the mortgage security was already barred, by action in October, 1884, and under the power in October, 1889. Plaintiff has never paid any part of the debt secured by the mortgage, and it is now barred by the statute of limitations. In August, 1891, Manheim and Haag conveyed an undivided third of the land to defendant Ash. The certificate and affidavit of foreclosure sale and all of the subsequent conveyances under which defendants derive their title were all recorded shortly after their execution, and all of the defendants purchased in good faith, and without any actual knowledge or notice of the defect in the record of the assignment of the Perkins mortgage. Neither had plaintiff any actual knowledge of the defect until he was informed of the fact by an attorney in May, 1893. Hence this suit. Plaintiff's contention is that the foreclosure under which defendants claim title was void, because, by reason of the error in the

record of the assignment of the mortgage, the ownership of the mortgage did not appear of record to be in the parties in whose names it was foreclosed. This is virtually admitted by defendants, but their contention is that the plaintiff is estopped by his own conduct from asserting the invalidity of the foreclosure.

The equitable doctrine of estoppel by conduct, which is altogether different from technical legal estoppels in pais, so far from being odious, is a favored doctrine of the courts. Equitable estoppel, in the modern sense, arises from the "conduct" of a party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience; its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel. Pomeroy, Eq. Jur. § 802. Horn v. Cole, 51 N. H. 287. While originally the creature of equity, it is now thoroughly incorporated into the law, and is as available in a legal action as in an equitable one; and while at one time the courts hesitated to apply the doctrine so as to give or divest an estate or interest in land, as being opposed to the letter of the statute of frauds, yet it is now well settled that a person may by his conduct estop himself from asserting his title to real property, as well as to personalty, although, as applied to the former, the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity.

Equitable estoppel has been defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy." Pomeroy, Eq. Jur. § 804. But, while certain general requisites are held essential to create an equitable estoppel, yet the courts have always been cautious,

as in the matter of defining fraud, not to give a definition of universal application without modification or limitation, and without reference to the peculiar facts of a particular case. The authorities are, however, substantially all agreed upon the following general propositions: First. To create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second. It is not necessary that the facts be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him. Third. It is not necessary that the conduct be done with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon.

Applying these general principles to the facts of the case, it seems to us that there is established the clearest case of equitable estoppel. The plaintiff knew not only that he had executed this mortgage containing a power of sale, but also that the power had been exercised and the land sold. Instead of taking steps to protect his rights in the property, either by redeeming from the sale or examining the records to ascertain whether the power had been legally exercised, he omitted to do anything, acquiesced in the foreclosure, abandoned the land to the sale, and renounced all the rights, and repudiated all the duties of ownership for nearly 20 years, during which time he must or ought to have known either that other parties were dealing with the property and paying the taxes on it on the faith of the foreclosure title, or else that his own title would be absolutely divested by reason of the nonpayment of taxes. After having thus utterly abandoned the property, and waited until both the mortgage security and the debt itself had been barred, he now seeks to recover the land relieved of the burden of the mortgage and of 20 years' taxes, and thus take advantage of his own laches, after the land has increased in value threefold, to recover vastly more than he would have recovered had he seasonably asserted the invalidity of the foreclosure. Indeed, had he asserted his rights promptly, it is apparent that he could have recov-

ered nothing of substantial value, for at that time the mortgage debt was considerably in excess of the value of the land.

It is no excuse to say that he had no actual knowledge of the defect in the foreclosure until informed of it by an attorney in 1893. He had the means of ascertaining the fact, and it was at least gross negligence for him not to do so. Bausman v. Faue, 45 Minn. 412, 48 N. W. 13; Wetzel v. Minnesota Ry. Tr. Co., 12 C. C. A. 490, 65 Fed. 23. His conduct did not, however, consist merely of silence or a negative omission to act. His acts and language to the defendants Manheim and Haag in December, 1889, amounted in effect to an affirmative declaration that he had no claim to or interest in the property. It is true that this was after they had bought of Mitchell, and after the mortgage was barred; but it was before defendants had paid the last $800 on their purchase money, and before plaintiff's note as his personal obligation was outlawed.

The plaintiff plants himself squarely on two propositions: First, that, as the invalidity of the foreclosure proceedings appeared on the face of the records, he was not called upon to act, but could bide his time, trusting to his legal title; and, second, that there could be no estoppel, because the defendants were chargeable with notice of the defect which the records disclosed. In this particular it must be conceded that the case differs from Bausman v. Faue, supra. We are aware that the general rule is that, when a party's right in property sufficiently appears of record, mere silence upon his part is no violation of duty, and he is not estopped to assert his rights against others dealing with the property as another's. This rule, however, is subject to certain limitations and qualifications which the courts have always recognized.

But in this case the conduct of the plaintiff did not consist of mere silence as to an adverse and hostile title. The title under which defendants claim is derived from plaintiff himself. He executed a mortgage with a power of sale, which he knew had been attempted to be exercised, and the defect which he is now asserting is the invalid exercise of that power. But by his conduct he has for 20 years acquiesced in the exercise of that power as valid, and abandoned the land to the title supposed to have been acquired under it, and repudiated all the duties of ownership. This amounts to more than mere silence in the presence of a claim of adverse and hostile

title. The mere fact that the records in the register's office furnished the means by which the defendants might have ascertained the defect in the foreclosure proceedings is not of itself sufficient to prevent them from insisting upon an estoppel.

It has been sometimes stated that in cases of alleged estoppel by conduct affecting the title to land, if the record of the real title would furnish a means by which the other party might ascertain the truth, he cannot claim to have been misled, and cannot insist on estoppel. Speaking on the subject, Mr. Pomeroy (Eq. Jur. § 810) says: "This conclusion, if correct at all, is correct only within very narrow limits, and must be applied with the greatest caution. It must be strictly confined to cases where the conduct creating the alleged estoppel is mere silence." See, also, Bigelow, Estop. p. 594. There are cases where it is the duty of a person to speak or act, although the actual state of the title might be ascertained by an examination of the records. Hence all the elements of an equitable estoppel may exist, notwithstanding that the records disclose the actual state of the title; and the courts have not infrequently applied the doctrine of estoppel by conduct in such cases, even when the conduct of the party estopped consisted merely of silence and failure to assert his title. Wetzel v. Minnesota Ry. Tr. Co., supra; Conklin v. Wehrman, 38 Fed. 874; Sumner v. Seaton, 47 N. J. Eq. 103–111, 19 Atl. 884. The authorities on this question are quite exhaustively reviewed in the opinion of the vice chancellor in the case last cited.

In the case at bar, in view of the conduct of the plaintiff, in acquiescing in the foreclosure and abandoning the land to it by renouncing all the rights and duties of owner for 20 years, he must have known, or at least was bound to know, that other parties would be dealing with the property upon the supposition that the title under the foreclosure was good. Under such circumstances, it was his duty to speak or act more promptly. It must also be borne in mind that the plaintiff and the defendants did not occupy the same position with reference to a discovery of the mistake in the records. Plaintiff was put exclusively to an examination of the records themselves, in order to ascertain their condition; while defendants had the original assignment of the Perkins mortgage with the official certificate of the register of deeds indorsed that it

had been duly recorded. They would naturally rely on this certificate, and it would not occur to a person even of ordinary prudence to examine the records themselves to ascertain whether it was true. As each case must depend somewhat upon its own particular facts, it is perhaps unsafe to generalize; but we are of the opinion that, under the facts of the case, the fact that the defect might have been discovered by an examination of the records does not prevent the defendants from insisting upon an estoppel. We are also of the opinion that the facts found by the trial court create an estoppel against plaintiff's now asserting the invalidity of the foreclosure.

The judgment is reversed, and the cause remanded, with directions to the court below to render judgment for the defendants, as prayed for in their answer.