## VALIDITY OF ORAL AGREEMENT FOR CONVEYANCE OF LAND.

Common Pleas Court of Hamilton County.

EDGAR STARK, EXECUTOR AND TRUSTEE UNDER THE WILL OF MARY ANN BRITT, DECEASED, v. DAISY ORR TURNER.[*]

Decided, April Term, 1921.

*Home Given to Niece as Wedding Gift, but no Deed Passed—Recovery of Possession Sought by Heirs of the Donor Twenty Years Later—Competency of Declarations Made by Donor in Her Lifetime—Statute of Frauds Not Applicable to Oral Agreements for Conveyance of Land, When—Laches.*

1. Declarations made by a deceased donor of land are competent when offered by the donee in defense of his title, but contrary statements by the donor fall within the prohibition of self-serving declarations and are inadmissible in evidence.

2. An oral agreement for conveyance of land is taken out of the statute of frauds and is enforcible in Ohio where there has been a part performance; and possession, even without the making of improvements, is such part performance, the only requirement being that whatever has been done shall be clearly referable to some contract relating to the specific land.

3. A party in possession can not be charged with laches, and where permanent improvements have been made and taxes and assessments paid by him, his failure to assert title until suit has been brought to dispossess him of the property does not give validity to the claim that his assertion of title was not made seasonably.

*Hackett & Yeatman,* for plaintiff.
*Buchwalter, Headley & Smith,* for defendant.

MATTHEWS, J.

The plaintiff, claiming to be the legal owner and entitled to the immediate possession of the east half of lot No. 107 of the Rose Hill Park Subdivision, Cincinnati, Hamilton county, Ohio, filed his petition in this case to recover possession thereof from the defendant, and for mesne profits.

[*] A similar judgment was entered in the Court of Appeals on the reasoning and authorities found herein.

The defendant filed an answer and cross-petition, and in her cross-petition alleged, among other things, that the plaintiff's testatrix in her life time, in contemplation of the defendant's marriage, made a gift by parol of said real estate to the defendant, placed the defendant in possession, which possession the defendant had held for about twenty years, during which time she and her husband had made permanent improvements on said real estate and paid the taxes and street assessments.

The prayer of the cross-petition is that the court decree specific performance of said parol gift, and that the defendant's title to said lands be quieted against the claim of the plaintiff.

The plaintiff replied denying the gift, and alleging the defendant had been guilty of laches.

Clara Dixon and Blanche Partridge McCarty, beneficiaries under the will of Mary Ann Britt, and entitled to one-third of the estate, have been made parties and have joined in the prayer of the petition. The other beneficiaries entitled to two-thirds of the estate, have conveyed their interest, if any, to the defendant.

The cause came before the court upon the issues raised by the defendant's cross-petition, evidence was offered, and said issues were submitted for decision by the court upon the law and the facts.

At the trial the court admitted evidence of declarations by Mary Ann Britt, the plaintiff's testatrix, offered by the defendant to prove the intention to make the gift. The court excluded evidence offered by the plaintiff of declarations made by said testatrix during her life time, the purport of which was that she spoke of the real estate in question as her property.

In admitting these declarations offered by the defendant, and excluding those offered by the plaintiff, the court followed the rule laid down in the early case of *Tipton* v. *Ross*, 10 Ohio Rep., 273, in which the court at page 274 said:

"While one holds the title, the admissions he makes may be given in evidence against him and against his privy. The heir, pursuing the estate of his ancestor, takes his right and interest, incumbered by all that rests against it, before descent. If this deed had been set up against John Ross, the father, while hold-

ing the land, his own admissions would have been competent evidence; they are equally competent when offered against his heir.''

Such declarations are only admitted in evidence as admissions against interest, and the declarations of an ancestor or testatrix are admitted in evidence against the person who is seeking to assert a right in the stead of the ancestor or testatrix; such ancestor or testatrix standing thus in privity with the litigant asserting the right, the declaration stands on the same basis as though the litigant himself had made it. It is therefore admissible against, but not in favor of such party.

In the case of *Ogden* v. *Dodge County*, 97 Ga., 461, the court had before it the double aspect of a case under facts almost identical with that of the case at bar, and held as stated in the syllabus:

''Declarations by a donor of land in favor of his own title, made after he has delivered possession of the same to the donee, are not admissible in evidence against the latter. Declarations of a donor against his title and in favor of that of the donee' bind the donor and his privies in estate, and consequently are admissible in the donee's favor against one who derived title from the donor after the declarations were made.''

The same rule was applied in the recent case of *Hayes* v. *Hayes*, 136 Minn., 389. And the same rule is stated textually in 22 Corpus Juris, 356 and 357, under division IX, which is headed ''Admissions'' commencing on page 296. In defining admissions on page 296, the author says:

''More accurately regarded, they are statements by a party or someone identified with him in legal interest, of the existence of a fact which is relevant to the cause of his adversary.''

At pages 356 and 357 the author classifies the declarations of a predecessor in title as a species of admissions or declarations against interest.

So it is the opinion of the court that these declarations of Mary Ann Britt during her life time were only competent as admissions against interest in favor of the defendant, and when

her declarations were offered by the plaintiff standing upon her rights they fell within the prohibition of self-serving declarations, and were therefore incompetent.

The basis of the admission of declarations by a prior owner of real estate was stated by our own Supreme Court in the recent case of *McAdams* v. *McAdams,* 80 O. S., 232 and 236.

The defendant asserting a right against the personal representative of the decedent to have her title quieted against the claim of the decedent's estate, and to have a specific performance of an oral agreement decreed, the degree of proof required as stated in the case of *Merrick* v. *Ditzler,* 91 O. S., 256, is:

"If the defense is made by the personal representatives of a deceased person, the contract, whether in writing or parol, must be established by clear and convincing proof."

Without stating in detail the evidence, but testing it by the degree of proof required, the court has concluded that the evidence offered proves the following facts:

That in the spring of 1899 the defendant was engaged to be married to William L. Turner, and in contemplation of that marriage Mary Ann Britt, who was the defendant's aunt, made up her mind to give to the defendant a home as a wedding present, and in pursuance of that intent after having inspected several houses, concluded to give to the defendant the house and lot which is the subject matter of this action. Accordingly Mary Ann Britt and the defendant went to Albert H. Mitchell and negotiated for the purchase of the house. At the time of the purchase Mrs. Britt stated to Mr. Mitchell that she was buying it to give to the defendant; and at the time of the execution of the deed gave as a reason for the insertion of her name as grantee, not that she was postponing the gift, but that for certain personal or family reasons the purchase was being consumated in the name of Mrs. Britt. Immediately upon the purchase of this property the keys were delivered to the defendant, and she and her husband took possession and have held uninterrupted and exclusive possession ever since. The defendant was married on May 31, 1899, and she and her husband have ever since occupied the property and used it in the same sense

that absolute owners occupy and use property.   The title on the
tax duplicate standing in the name of Mrs. Britt, the tax bills
went to her, but the defendant's husband regularly reimbursed
her for the taxes paid, and in addition paid all street assessments.
The evidence also shows that they have kept the premises in
repair, and in addition thereto have expended money in im-
provements and betterments of a kind that would be done by the
owner of property, but not by a tenant.   During the early years
of the occupancy of this property by the defendant, the defend-
ant and her husband contemplated buying the west half of the
lot of which the premises in question are a part, and at that
time Mr. Turner went to Mrs. Britt and told her that he con-
templated buying the west half of the lot, but owing to the
building restriction preventing only one house being constructed
upon a lot, that he hesitated about buying the west half because
of the legal title to the east half not standing in the name of his
wife; thereupon Mrs. Britt told him that the east half belonged
to the defendant, that she had given it to her, and that he
should have no uneasiness about it, and to go ahead and buy the
west half of the lot, which he thereupon did.

Shortly before Mrs. Britt's death, as well as at various other
times between 1899 and 1910, Mrs. Britt stated to other persons
that she had given this property to Mrs. Turner, that the reason
she did not execute and deliver a deed was that she did not want
certain of her relatives to know of the gift, and that she had
prepared a deed transferring the property to the defendant,
which was to be delivered to her upon the death of Mrs. Britt.
However, neither this deed to the defendant, nor the deed from
the Mitchell estate to Mrs. Britt was found among her papers
after her death, and at that time the record title to the property
still stood in the name of the Mitchell estate, although there had
been a transfer upon the tax duplicate from the Mitchell estate
to Mrs. Britt.

This evidence by witnesses whose trustworthiness the court
can not doubt, shows that there was a gift *in praesenti*, and a
delivery of possession of the subject matter of the gift to the
donee, who has ever since been in exclusive and uninterrupted

possession, acting with reference to the property as an absolute owner would.

The question before the court is as to the rights of the parties under the circumstances. It is urged by the plaintiff in the first place, that the defendant is seeking to enforce an oral agreement for the transfer of an interest in land, and that this is prohibited by Section 8621, General Code, being a part of our statute of frauds. The defendant has answered that taking possession with the attending and following circumstances is such a part performance as takes the oral agreement out of the statute.

That taking possession is such a part performance as will take an agreement out of the statute of frauds, we find was so firmly settled as early as 1824 as to cause the Supreme Court in *Wilber* v. *Paine,* 1 Oh., 248 at 256, to say:

"It has frequently been held on the circuit, that the delivery of possession, on a parol agreement, was sufficient to take it out of the statute, and we see no reason to reverse the rule or to reject the principle on which it is founded."

In *Waggoner* v. *Speck,* 3 Ohio, 293, at 294, the court upon this subject says:

"It has become the settled construction of our statute for the prevention of frauds and perjuries, that the delivery of possession is such a species of part performance as may take a case out of the statute, when the effect of it is not controlled by other facts connected with the case."

And in *Grant* v. *Ramsey,* 7 O. S., 158, at 167, the court discussing this subject says p. 166:

"No distinction is made by the terms of the statute, between leases for years, estates for life, or in fee simple; nor between leases for a term not exceeding one year, and those for a longer term. All estates or interests in lands, are placed on the same footing, and it is certain that contracts for the absolute sale of lands, in fee simple, are constantly held by our courts to be taken out of the operation of the statute by part performance, and that a change of possession and part payment will constitute a sufficient part performance for this purpose. The clauses of our statute relied upon in this case, are but a re-enactment of the English statute upon the same subject, and the courts of

that country have always regarded leases, without regard to their duration, as taken out of the statute by part performance.''

Many cases are referred to and the subject discussed at length in the case of *Gramann* v. *Borgmann*, 14 N.P.(N.S.), 449.   At 457, the court in discussing what constituted such a part performance as will take the case out of the statute, says:

''It is not necessary, at least in this state, that the acts of part performance be referrable to the contract which is set out, and to no other contract whatever.   It is sufficient if they 'clearly refer to some contract in relation to the subject-matter in dispute; its terms may then be established by parol.' ''

So that the rule deducible from these authorities is that an oral agreement for the conveyance of an interest in real estate is enforcible in Ohio where there has been a part performance; and that, contrary to the decisions in many states, a taking possession even without improvements, is such a part performance as will take the case out of the statute; that the only requirement of part performance is that what is done shall be clearly referable to some contract relating to the specific land, and that thereupon oral evidence is admissible to show what the actual contract between the parties with reference to that land is.

The court therefore concludes that the taking possession of this property by the defendant, and holding it exclusively and uninterruptedly constitutes such a part performance as takes the contract out of the statute of frauds, and that therefore the defendant's action is not barred by that statute.

It is also urged that the defendant has not shown that she is entitled to relief in equity, for the reason that the agreement to transfer the title and the actual transfer of possession was in fact a gift, and that therefore in as much as a contract to be enforcible as such must be supported by a consideration, neither a court of law nor equity will aid the defendant.

If the defendant's cause of action is dependent upon proof of an originally enforcible contract, it certainly fails, because it is conceded that the intention to transfer this property and the ac-

tual transfer of its possession to the defendant was purely voluntary on the part of Mrs. Britt.

The rule is too fundamental to require a citation of authorities that an unexecuted gift is uninforcible, and that an intention to give in order to be binding must be followed by delivery. Till then no gift has been made and as no consideration passes to the donor no legal obligation exists to consummate the transaction. In the opinion of the court however, the case at bar does not fall within this general rule. The evidence shows that Mrs. Britt intended to make a gift of this property and she did deliver the property to the defendant; the only unperformed part was the execution and delivery of the deed, so as to vest the legal fee simple title in the defendant.

Many cases have been before the courts where donees of gifts of land followed by delivery of possession have been protected where it would be inequitable to permit the donor to disturb the donee in the possession of the premises given. This remedy does not compel the execution of a gift but prevents the revocation of a gift. The gift has already been made, and the remedy in equity in such case is to prevent the donor from using the power vested in him, because of the retention of the legal title, to disturb the donee in the enjoyment of the executed gift.

The reasons underlying the decisions are clearly stated in the case of *Trebesch* v. *Trebesch,* 130 Minn., 368, at 370 and 371.

"To constitute a valid transfer of land by verbal gift, there must be a gift completely executed by delivery of possession, and performance of some acts sufficient to take the case out of the statute of frauds. The performance necessary for this purpose must be an acceptance, a taking of possession under and in reliance upon the gift, and the doing of such acts in reliance thereon that it would work a substantial injustice to hold the gift void. *Snow* v. *Snow,* 98 Minn., 348, 108 N. W., 295; *Hayes* v. *Hayes,* 126 Minn., 389, 148 N. W., 125.

"3. It was said in one case: 'The whole doctrine (of part performance) rests upon the principle of fraud.' *Brown* v. *Hoag,* 35 Minn., 373, 29 N. W., 135. In another case it was said there must be something to impute to the vendor 'wrongful intent which alone furnishes an occasion for the interference of equity to enforce verbal agreements.' *Townsend* v. *Fenton,* 32

Minn., 482, 21 N. W., 726.   Other cases rest the doctrine on the ground of estoppel rather than fraud.   *Jorgenson* v. *Jorgenson*, 81 Minn., 428, 84 N. W., 221; *Snow* v. *Snow*, 98 Minn., 348, 108 N. W., 295.   But the difference is mostly one of names.   The ground upon which the remedy rests is in reality that of 'equitable fraud'; not an antecedent fraud consciously intended by the donor in making the gift, but a fraud inhering in consequence of setting up the statute, for it would be a virtual fraud for the defendant, after permitting the acts of part performance to interpose the statute as a bar to the plaintiff's remedial right.   4 Pomeroy, Eq. Jur., Sec. 1409; *Horn* v. *Ludington*, 32 Wis., 73. This does not differ much from the doctrine of estoppel, for although fraudulent intent is not an essential element of the conduct working an equitable estoppel (*Diamond* v. *Manheim*, 61 Minn., 178, 63 N. W., 495), yet in every case of equitable estoppel 'it may with perfect propriety be said that it would be fraudulent for the party to repudiate his conduct, and to assert a right or claim in contravention thereof.'   2 Pomeroy, Eq. Jur., Sec. 805; *Brown* v. *Hoag*, 35 Minn., 373, 29 N. W., 135.''

Other cases showing instances in which a donor has been prevented by a court of equity from revoking the gift by asserting the legal title, are:   *Curts* v. *Hibner*, 55 Ill., 514; *Haggerty* v. *Haggerty*, 172 N. W., 259 (1a.); *Hayes* v. *Hayes*, 126 Minn., 389; *Steinman* v. *Clinchfield Coal Corp.*, 240 Fed., 561; *Ungley* v. *Ungley*, 4 Chancery Div., 73.

In most of the states the law is that possession alone is not such part performance as will take the agreement out of the statute of frauds, and for that reason we find in most of the cases a discussion of the subject of improvements taking the agreement out of the statute along with and frequently inextricably commingled with a discussion of a change of the status quo rendering it inequitable to permit the donor to assert his legal title and thereby disturb the donee in the possession of the gift. Improvements on the land are all important in those states but in Ohio they are only pertinent as one of any conceivable number of circumstances reflecting upon the equity of permitting the donor to disturb the donee in the possession of the property.

Tested by the rule announced in these cases, not as to what is such part performance as will take an agreement out of the statute because Ohio has its own rule on that subject, but by the

rule established in those cases as to when in good conscience the defendant should be restrained from revoking or limiting the extent of a gift, the plaintiff upon equitable principles is barred from disturbing the defendant in the possession of the premises in question. The intention to give was clearly proven; the marriage in contemplation of which the gift was made, took place; exclusive possession was immediately taken by the defendant, and such possession has continued uninterruptedly to the present time; while the possession has continued the defendant and her husband have expended money upon said property in various ways, and in the opinion of the court it is not a sufficient answer to say that the rental value during the time equalled or exceeded the expenditure. If that were a sufficient answer then a donee of land having made valuable improvements immediately on taking possession, and having thereby acquired a title which would be protected in equity, would by continuing in possession until the rental value exceeded the value of the improvements, have his title withdrawn from the protection of a court of equity.

Furthermore, in the case at bar, in addition to the other changes of position, relying upon this gift the defendant and her husband purchased the adjacent half of lot No. 107, a circumstance which in itself would make it inequitable to permit the donor to revoke the gift.

It is argued that assuming that the defendant was entitled at one time to protection by a court of equity, that she has lost this right by failure to assert it seasonably. Upon this claim of the plaintiff it is to be noted that the defendant has been in possession of this property all the time, and that never until the institution of this action to recover possession has she been disturbed in that possession.

A party in possession can not be charged with laches; this is stated in the text of Pomeroy's Eq. Jur., Vol. 4, 4th Ed., Section 1454, in this language:

"A party in possession of land who resorts to a court of equity to settle a question of title is not chargeable with laches, no matter how long his delay. Such a party is at liberty to wait until his title is attacked before he is obliged to act. The most

frequent illustrations of this principle are found in suits by par·
ties in possession to remove a cloud on title or to quiet title.''

The author cites many cases in the note in support of the text.

The conclusion to which the court has come is that the evidence
proves a gift of the land in question; that it would be inequita-
ble, under the circumstances, to permit the plaintiff to revoke
this gift or limit its duration by the assertion of the legal title, and
that therefore a court of equity will decree a transfer of the
legal title from the plaintiff to the defendant, and quiet the de-
fendant's title against the plaintiff's claims.

A decree may be prepared in accordance with this opinion.