**Vashti Hoover GARVER and husband, T. L. Garver, Appellants,**

**v.**

**The FIRST NATIONAL BANK OF CANADIAN, Appellee.**

**No. 7871.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 23, 1968.

Rehearing Denied Oct. 21, 1968.

Crow & Crow, J. D. Crow, Canadian, for appellants.

Gibson, Ochsner, Harlan, Kinney & Morris, J. Hadley Edgar, Jr., Amarillo, Wm. J. Jackson, Canadian, Linn & Helms, Richard N. Countiss, Spearman, for appellee.

NORTHCUTT, Justice.

This is a summary judgment case. Vashti Hoover Garver joined by her husband, T. L. Garver, filed a suit against the First National Bank of Canadian seeking recovery of an undivided one-fourth of the proceeds from delay rentals on oil and gas leases which had been forwarded from various oil companies to the bank as depository for the benefit of Mrs. Garver, her sister Louise Hoover and her two brothers, Dan B. Hoover and Ed H. Hoover, Jr., being all the children of H. E. Hoover and wife, Bragg Winsett Hoover.

The Sinclair delay rentals were payable to the four children (including their respective spouses) jointly; Union Oil delay rentals were payable to them "as a group"; others were to the "credit of the parties shown above", "persons named" or "all the parties". Until July, 1964, the bank was never requested by any of the parties to deposit the delay rentals to any account except the Hoover Ranch Account, other than upon certain specified occasions to the Hoover Estate Account and the Estate Tax Account.

H. E. Hoover died in 1945 and Mrs. Bragg Hoover in 1952, each leaving their sons just named as independent executors of their estates without bond. The only other children they left surviving them were the two daughters just named. The defendant below will be referred to hereafter as appellee or as the bank. Plaintiffs below will be referred to as appellants or by their names.

After oral depositions were taken of H. S. Wilbur, Sr., Chairman of the Board of Directors of the bank; Harry Wilbur, Jr., President of the bank and all the Hoover heirs except Louise Hoover, motions for summary judgment were filed by both appellants and appellee. In support of such motion by appellee both of the bank officers named made affidavits. J. D. Crow, attorney for appellants, made an affidavit in support of his client's motion for summary judgment. Additionally, the record shows appellants' original petition and amended original petition and supplemental petition and their reply to the bank's motion for summary judgment. Following the filing of all such pleadings, depositions, affidavits and motions the court, after a hearing on the same, sustained the appellee's motion for summary judgment and denied appellants' motion. From the order overruling appellants' motion for summary judgment appellants perfected this appeal.

It is our duty to affirm the judgment of the trial court if, in view of the entire record, it may be done on any applicable legal theory. Construction & General Labor Union, Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73. In the last cited case the Court said "* * * that an appellate court will sustain the judgment of a trial court if it is correct on any theory of law applicable in the case, and that regardless of whether the trial court gives the correct legal reason for the judgment he enters, or whether he gives any reason at all". See also Schenker v. City of San Antonio, Tex.Civ.App., 369 S.W.2d 626 (ref'd n. r. e.); Golden State Mutual Life Ins. Co. v. Adams, Tex.Civ.App., 340 S.W.2d 77 (n. w. h.); Flores v. Logan, Tex. Civ.App., 307 S.W.2d 813 (n. r. e.); Lance v. City of Mission, Tex.Civ.App., 308 S.W.2d 546 (n. r. e.).

Dan Hoover and Ed Hoover first qualified as independent executors of the estate of their father in 1945. They also qualified in the same capacity of their mother's estate following her death. Though Mrs. Garver testified in the deposition she was certain no one was ever appointed independent executor of H. E. Hoover Estate or the Bragg Hoover Estate, the probate records in evidence refute her testimony and leave such testimony without merit. She never made any complaint to the bank of the manner in which it carried the accounts of the estates until 1964. During at least 15 years of that period she was accepting checks from Dan and Ed drawn on the Ranch Account in which the delay rentals were deposited. For 19 years the Ranch Account received all income including the delay rentals without complaint by appellants.

The uncontradicted bank records show it has received a total of $127,808.46 in delay rentals from 1949 for the four heirs. The record is also uncontradicted that the funds were deposited in the manner directed by Dan and Ed. Appellants' one-fourth would

have been $31,952.12. From 1955 to 1963 the bank paid out $96,939.08 to appellants from such account. It is undisputed that the Ranch Account was a joint operating account from which Dan and Ed also paid operating expenses upon thousands of acres of farm and ranch land.

In Mrs. Garver's deposition she admitted the checks she received from 1945 were drawn on the Ranch Account and signed by Dan and Ed; that she never had her mother and father's estate withdrawn from administration; that she knew nothing about the manner or method by which Dan and Ed managed the estate; though she knew signature cards authorized the bank to honor checks, she did not know the names appearing on the signature cards of the estate account and never asked the bank to put her name on such cards; that in 1963 she hired an auditor to audit the books of the estate and her brothers paid her part of the audit fee; she did not tell the bank to handle the delay rentals any differently nor notify it that Dan and Ed did not have any authority to handle the estate as they did until July 9, 1964; that she never advised the bank until July, 1964, not to put the delay rentals money in the Ranch Account and what actually happened was that the bank did what Dan and Ed told it to do for 19 years; that the details of handling all the various estate interests were under the control of her brothers from 1945 to 1964 with her knowledge; that she never personally paid any of the expenses incident to handling the estate, consisting of several thousand acres of land; and that her share of the money to which she was entitled could not be determined without an audit of the books of the estates which were kept by Dan and Ed. She also admitted:

"Q. What your real complaint here is, isn't it, Mrs. Garver, that Dan and Ed * * *

A. Dan in particular.

Q. * * * Dan in particular, has not paid you the money you feel he should have paid you?

A. Now, you are getting where I can understand and that is what I am looking for.

Q. That is your real complaint?

A. That is my complaint, absolutely."

Both Dan and Ed Hoover testified by depositions that they administered the estates of their father and mother, and in their capacities as independent executors changed the H. E. Hoover Grain Account to the H. E. Hoover Ranch Account and opened other banking accounts with appellee. While acting in that capacity the two sons certainly had the authority to manage and handle the business affairs of the estates. Sec. 145, Probate Code.

They also admitted that in addition to acting as independent executors they operated as managers of the various estates' business until 1964 as a joint enterprise with their sisters; they received the income, paid the bills, authorized and directed the bank to deposit both surface rentals and oil and gas rentals into the Hoover Ranch Account. Upon receipt of the first oil and gas delay rentals in 1945 Dan and Ed directed H. S. Wilbur, Sr., who handled the transactions, to deposit the delay rentals into the Hoover Ranch Account in the future. Such method of depositing was confirmed in the deposition of Harry Wilbur, Jr. It is undisputed in the record that the Hoover Ranch Account was a joint operating account for the benefit of all four children including Mrs. Garver.

Harry Wilbur, Jr. by affidavit swore Dan B. Hoover and Ed Hoover, Jr. have been the only persons to act as managers of both the Hoover estates since 1945 and that they so represented themselves to him as such; that according to information furnished him all the deposits were for the benefit of the four heirs, subject to the signatures of Dan and Ed. His affidavit also shows that appellants' attorney advised the bank on July 9, 1964, to thereafter deposit one-fourth of all delay rentals to her personal account; that immediately thereafter he contacted the executors and managers of the estates and they authorized them to do so which has been done at all times since; that the accounts have always been available to appellants for inspection but they never asked to examine them; that appellants made no complaint to the bank from 1945 to 1964 concerning any item which the bank handled for the estate and the bank had no reason to suspect she claimed Dan and Ed had no authority to act with respect to the delay rentals deposited to the bank.

We believe there are several legal grounds which require the affirmance of the court's judgment. Rule 93, Vernon's Ann.Texas Rules provides, inter alia, "A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit: (f.) A denial of partnership as alleged in any pleading as to any party to the suit." Appellee especially pleaded that appellants and Dan and Ed, and Louise Hoover were operating as a partnership and the bank dealt with Dan and Ed in that capacity. Such partnership was never denied under oath by appellants, so stands admitted. True v. Gettler, Tex.Civ.App., 256 S.W.2d 958 (writ ref'd); Coulson v. Alvis Auto Rentals, Inc., Tex.Civ.App., 352 S.W.2d 849 (n. r. e.); Howell v. Bowden, Tex.Civ.App., 368 S.W.2d 842 (n. r. e.). A general denial does not put the question of partnership in issue. Curry v. E. E. Stone Lumber Co., Tex.Civ.App., 218 S.W. 2d 293 (n. r. e.).

Appellants pleaded in their supplemental petition with much elaboration that they neither acquiesced in, rectified or affirmed the method by which the delay rentals were deposited, asserting that the bank's pleadings nowhere state any basis which operate to excuse the deposits being made in compliance with the direction of the oil companies; and that they have always

expected deposits to be made to their credit. That pleading is sworn to by appellants, but we do not believe such pleading constitutes a denial under oath of the partnership alleged in appellants' pleadings within the purview of Rule 93(f) above quoted. Neither is there any denial under oath of partnership in any other pleadings. Since the partnership stands in this record as admitted, the bank had the authority to deal with Dan and Ed as it did. Art. 6132b, Sec. 9(1) Uniform Partnership Act, Vernon's Ann.Tex.Civ.St. It is without contradiction in the record that the bank dealt with Dan and Ed Hoover for all the years mentioned with no knowledge. that appellant questioned her brothers' authority to act for them.

■ Dan and Ed having testified they had the authority to act and Mrs. Garver having admitted they did so, though contending without authority, the doctrine of presumed authority arose. It has been textually stated that " * * * An agency may be implied from acquiescence. Thus, if a person * * * knowingly permits him to act as agent, or the circumstances are such as to raise a presumption of agency, the authority of the agent will be presumed, in so far as the rights of the third persons are concerned." 2 Tex.Jur.2d, Agency, Sec. 11, P. 447. " * * * The paramount question * * * is not the extent of the authority actually given, but, instead, the extent of authority that a third person, dealing with such agent, may justifiably believe the agent to possess". 2 Tex.Jur.2d, Agency, Sec. 44, P. 485. Thus, presumed authority arose as a matter of law.

Appellee also pleaded waiver and estoppel which also appears to us to be a valid legal defense to appellants' contentions. Mrs. Garver admitted by deposition that the details of handling the estates' interests were under control of Dan and Ed from 1945 to 1964; that they "just took over" and she knew nothing of the handling of the business affairs of the estate; that she accepted checks written on the Ranch Account

signed by Dan and Ed; and that it was not until July, 1964, that she notified the bank her brothers were without authority.

■ The doctrine of estoppel may exist as a matter of law. Whitten v. Republic National Bank of Dallas, Texas, Tex., 397 S.W.2d 415; Champlin Oil & Refining Co. v. Chastain, Tex., 403 S.W.2d 376. In the latter case it is stated:

"It seems clear that under certain circumstances, one having the means of knowledge may be held to the same standard of responsibility as one possessing conscious knowledge. In Dimond v. Manheim, 61 Minn. 178, 63 N.W. 495 (1895), the Court after citing and quoting from Pomeroy, Equity Jurisprudence, set forth the following rules:

" 'The authorities are, however, substantially all agreed upon the following general propositions: First, to create an estoppel, the conduct of the party need not consist of affirmative acts or words. It may consist of silence or a negative omission to act when it was his duty to speak or act. Second, it is not necessary that the facts must be actually known to a party estopped. It is enough if the circumstances are such that a knowledge of the truth is necessarily imputed to him. Third, it is not necessary that the conduct be done with a fraudulent intention to deceive, or with an actual intention that such conduct will be acted upon by the other party. It is enough that the conduct was done under such circumstances that he should have known that it was both natural and probable that it would be so acted upon.' "

(8) It has been determined by Texas authority that imputed actual notice carries with it the same legal consequences as conscious knowledge."

We also believe under the record here appellants are barred by laches or stale demand. The Supreme Court in Gulf, Colorado and Santa Fe Ry. Co. v. McBride, 159

Tex. 442, 322 S.W.2d 492 in quoting with authority from another case defined laches as follows:

> " 'In Ross' Estate v. Abrams, Tex.Civ. App., 239 S.W. 705, 709, Chief Justice Fly quoted with approval from Pomeroy on Equity, Vol. 5, Sec. 1442, as follows: "Laches, in legal significance, is not mere delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right." Culver v. Pickens, 142 Tex. 87, 176 S.W.2d 167, 170.' "

The San Antonio Court of Civil Appeals in Los Angeles Heights Independent School District v. Chestnut, 287 S.W. 693 (n. w. h.) has stated:

> "No one has the right to so act or remain inactive when action is demanded, and cause another party to so change his condition as that great damage will be inflicted on him by granting the remedial writ."

Mrs. Garver's excuse as shown in her deposition for not taking action on the matter earlier was "Dan and Ed would buy off any lawyer she hired". She does not explain in her deposition why such attitude excused her from contacting the bank.

■ We are of the opinion, and so hold, since Dan and Ed Hoover were the independent executors of their father and mother's estates and continued for some 19 years to handle the same with the full knowledge and consent of appellants, and appellants knowing the money they received by checks from Dan and Ed was drawn upon the bank account here involved, that they are estopped to complain of the manner the appellee handled the funds here involved. Judgment of the trial court is affirmed.